[Civ. No. 3028.   Third Appellate District.—November 24, 1925.]

## JOHN DOUGLAS, Petitioner, v. PENSION BOARD OF THE CITY OF SACRAMENTO et al., Respondents.

[1] PENSIONS—STATUTORY CONSTRUCTION—LANGUAGE HAVING DIFFERENT MEANINGS—INTENT.—Where given language is capable of two different constructions, dependent upon the connection in which it may be used, the question for the court is, what meaning did the legislature, if used in a statute, or of the parties, if used in a contract, or of the framers of a charter, if used in the organic law of a municipality, intend that the language should bear; and that intention must be ascertained by a consideration of the language used in connection with the entire context of the measure or instrument, the consequences following a construction either way, and the object it was designed that the instrument or measure was to attain.

[2] ID.—EFFECT OF PENSION LAWS—INTENT.—The effect of laws providing for the payment of retirement pensions to public officers or employees is to increase the compensation of such officers and employees, and they are so intended; and this proposition has particular force as to public officers who perform services as such subsequent to the passage of the law granting such pensions.

[3] ID.—CONSIDERATIONS FOR ADOPTION OF PENSION SYSTEMS.—The considerations upon which a government adopts, as part of its administrative policy, a system for the pension of those who have continuously, for a specified period of years, served the government in the performance of public civil duties, both as officers and employees, are to encourage those public officers or employees who have by experience or otherwise demonstrated peculiar fitness for the performance of the public services to which they have been assigned to continue in the service of the government and

1.  See 23 Cal. Jur. 725, 760.
2.  See 20 Cal. Jur. 996.

at all times faithfully discharge the duties involved in such service, and to safeguard or insure such officers or employees against a possible condition of penury and want when, after giving the best part of their lives to the service of the public, they are no longer able to perform, to the degree required, labor of any character or kind.

[4] ID.—RIGHT TO PENSION—ADMINISTRATION OF SYSTEM—STATUTORY CONSTRUCTION.—While no public officer or employee is entitled as of right to be granted a pension, when a government has adopted a retirement pension system it should be so administered as to bring about the efficacious results which it is intended to produce, and it should not be so construed and administered as to confer its benefits upon those not actually entitled thereto, nor that those so entitled should be denied their just rights thereunder.

[5] ID.—SACRAMENTO CHARTER—RIGHT TO PENSION—LEGISLATIVE INTENT.—By the provisions of the charter of the city of Sacramento establishing a retirement pension system it was intended that every officer or employee of said city who has performed services for the city for the specified number of years, based either upon the age limit or disability, shall, upon his retirement, receive the compensation or pension specified in the charter, and that intention should be carried out in all proper cases, and never set at naught in any particular instance, except it is plainly apparent that the conditions upon which pensions are to be granted do not exist.

[6] ID.—PER DIEM EMPLOYEES—AMOUNT OF PENSION.—Under the provision of section 171 of the charter of the city of Sacramento that an employee eligible to relief and pension shall receive "one-half of the salary paid him one year prior to his retirement," it was intended that a *"per diem"* employee, upon his retirement at the end of the twentieth year of continuous employment in the service of the city, should receive a pension in an amount equal to one-half of what his compensation would total in the twentieth year of such employment, counting every working day in the year, and this whether he has or has not actually performed the service required in his employment every working day of such year.

---

(1) 13 C. J., p. 521, n. 18, p. 527, n. 43, p. 541, n. 24, p. 543, n. 32; 36 Cyc., p. 1106, n. 29, p. 1110, n. 54, p. 1111, n. 69, p. 1112, n. 72, p. 1116, n. 3, 4, p. 1131, n. 73.   (2) 28 Cyc., p. 604, n. 73 New; 29 Cyc., p. 1426, n. 51.   (3) 28 Cyc., p. 604, n. 73 New; 29 Cyc., p. 1426, n. 51.   (4) 28 Cyc., p. 604, n. 73 New; 29 Cyc., p. 1426, n. 51, 54 New.   (5) 28 Cyc., p. 604, n. 73 New.   (6) 28 Cyc., p. 604, n. 73 New.

4.   See 20 Cal. Jur. 997.
5.   See 20 Cal. Jur. 1001.

PROCEEDING in Mandamus to compel the granting of a pension to petitioner. Writ granted.

The facts are stated in the opinion of the court.

Henry & Bedeau for Petitioner.

R. L. Shinn for Respondents.

HART, J.—Subsequent to the institution of this proceeding the petitioner passed out of life, and William Douglas, the duly appointed administrator of his estate, by stipulation of the respective counsel, has been substituted for and in the place of the deceased as petitioner herein.

The proceeding involves an original application for a writ of mandate to compel the respondents, the Pension Board, and the members thereof, of the city of Sacramento, to allow and grant to petitioner an annual pension of $646.34 as a retired employee of said city by virtue of certain provisions of the charter thereof. By said charter, the city of Sacramento has established a system for the pensioning, upon specified terms and conditions, the employees thereof. Section 167 of said charter creates a Pension Board, consisting of the city manager and the members of the civil service board of said city. Section 168 provides: "All employees of the City of Sacramento who have served the City continuously for twenty years *in any capacity* (italics ours), except as an elective officer or City Manager shall be eligible to relief and pension."

Section 169 provides that all city employees shall be retired upon reaching the age of seventy years; that the Board may retire and relieve from service any member of the police or fire department who has passed the age of fifty-five years, and any other employee of the city who has passed the age of sixty years, and who on examination by two regularly licensed physicians, selected by the board to conduct such examination, is found to be unfit for the performance of his duty, "shall receive an annual pension equal to one-half of the salary *paid him* one year prior to his retirement." Reference to other sections under the chapter relating to the pensioning of officers and employees

75 Cal. App.—22

of the city, except section 171, may be omitted herefrom as having no special concern with the problem submitted here for solution. The section last named, as petitioner contends, furnishes the source of his right to the amount of the pension to which he claims to be entitled as a retired employee of said city. It provides: "Any city employee, who is eligible to relief and pension as defined by section 168 and who has become disabled, upon filing with the Pension Board a verified petition, setting forth the facts constituting such disability, and the cause thereof, accompanied by a certificate signed by the head of his department, and by two regularly licensed physicians in the employ of the city, designated by the Board for that purpose, recommending his retirement upon a pension, on account of such disability, may be retired upon an annual pension *equal to one-half of the salary paid him one year prior to his retirement,* said pension to cease at his death. In case his disability shall cease, his pension shall cease, and he shall be restored to the service in the rank he occupied at the time of his retirement."

From the petition for the relief herein prayed for, it appears that for more than twenty years immediately prior to the twentieth day of August, 1921, the petitioner was continuously employed by the city of Sacramento in the street department thereof; that, after such continuous service of twenty years, and on said twentieth day of August, 1921, the petitioner, on account of disability was retired from such service; that, at the time he was so retired, and for more than one year immediately prior to his retirement, petitioner was paid as compensation for the service so performed by him for said city the sum of $4.13 per day, or the annual compensation of $1,292.69; that, during the year next preceding the twentieth day of August, 1921, on account of sickness, petitioner was unable to work for a period of approximately three months thereof, and that by reason thereof he actually received for the service so performed for the city the sum of $960.48; that respondents computed and determined the amount of annual pension to be paid to petitioner on the basis of the money actually received during or for said year, to wit, the sum of $960.48; that petitioner has often demanded of respondents that they allow him an annual pension of $646.34,

which is equal to one-half of his annual salary or compensation ($1,292.69) during or for said year, and that they issue warrants therefor accordingly, but respondents. "refused and still refuse to do so, claiming and contending that the petitioner is entitled only to an annual pension equal to one-half of the money he actually received during said year."

The respondents demurred to the petition on the general ground.

As the petition states, the respondents contend that the italicized language of section 171, to wit: "equal to one-half of the salary paid him one year prior to his retirement," means and was intended to mean that the basis of computation of the annual pension of an employee retiring after twenty years of service because of disability is the amount of money which has actually been paid to him by the city for the year prior to the date of his retirement. *Per contra,* the petitioner insists that the compensation is to be based upon the annual salary or the total amount he would have been entitled to receive had he put in every working day in the performance of the service assigned to him.

[1] The language referred to is capable of different constructions, dependent, however, upon the connection in which it may be used. In certain conceivable connections it might properly be held to bear or to have been intended to bear the meaning ascribed to it by the city attorney, representing respondents. In other connections it might with equal propriety be construed to have been intended to carry the meaning which the petitioner claims for it. Thus it is clear that the question in such a situation would be, what meaning did the legislature, if used in a statute, or of the parties, if used in a contract, or, as here, of the framers of the charter, if used in the organic law of a municipality, intend that the language should bear, and that intention must be ascertained by a consideration of the language in connection with the entire context of the measure or instrument, the consequences following a construction either way, and the object which it was designed that the instrument or measure was to obtain. In other words, in such a case the question is one of intention, to be determined upon the considerations indicated, and that is

the question before us which by a like process must be determined.

[2] The effect of laws providing for the payment of retirement pensions to public officers or employees is to increase the compensations of such officers and employees and they are so intended. This proposition has particular force as to public officers who perform services as such subsequent to the passage of the law granting such pensions. (*Whitehead* v. *Davie*, 189 Cal. 715, 717 [209 Pac. 1008]; *Hammitt* v. *Gaynor*, 144 N. Y. Supp. 123; *People* v. *Abbott*, 274 Ill. 380 [Ann. Cas. 1918D, 450, 113 N. E. 606]; *State* v. *Love*, 89 Neb. 149 [Ann. Cas. 1912C, 542, 34 L. R. A. (N. S.) 607, 131 N. W. 196].) [3] The considerations upon which a government adopts, as a part of its administrative policy, a system for the pensioning of those who have continuously, for a specified period of years, served the government in the performance of public civil duties, both as officers and employees, are, in a large measure, these: 1. To encourage those public officers or employees who have by experience or otherwise demonstrated peculiar fitness for the performance of the public services to which they have been assigned to continue in the service of the government and at all times faithfully discharge the duties involved in such service. The hope held out for future additional reward or compensation for their public services to that which they receive concurrently with the period during which they are actually and actively engaged in performing such services is conducive to uniform faithfulness and efficiency in discharging the duties which their offices or employments have exacted. 2. To safeguard or insure such officers or employees against a possible condition of penury and want when, after giving the best part of their lives, both in point of time and service and ability, to the service of the public, are no longer able to perform, to the degree required, labor of any character or kind. A more just and humane consideration of the class or classes of persons for whom such a provision is made by a government can hardly be conceived. Indeed, the justness of a pension system for the benefit of those who, after long service, must be retired from old age or disability is now so far recognized that it has even become the uniform custom with private corporations to maintain

a reasonably framed and well-regulated system of retirement pensions for the benefit of those of their employees who have been in their service continuously for a specified number of years, or to a time when by reason of their advanced age or physical disability they are no longer able, with the efficiency required, to perform the particular duties demanded by such service.

[4] While, of course, no public officer or employee is entitled as of right to be granted a pension, still, when a government has adopted a retirement pension system, it should be so administered as to bring about the efficacious results which it is intended to produce. It should not be so construed and administered as to confer its benefits upon those not actually entitled thereto, nor so that those so entitled should be denied their just rights thereunder.

[5] By the provisions of the charter of the city of Sacramento establishing a retirement pension system it was intended, of course, that every officer or employee of said city who has performed services for the city for the specified number of years, based either upon the age limit or disability, shall, upon his retirement, receive the compensation or pension specified in the instrument, and that intention should be carried out in all proper cases, and never set at naught in any particular instance, except it is plainly apparent that the conditions upon which pensions are to be granted do not exist.

[6] That the petitioner's intestate was a "city employee," and "eligible to relief and pension as defined by section 168" of the city charter, is admitted here, and it will be observed that, where the compensation of the city employee is fixed as by day's wages, as in the case of petitioner's intestate, section 171, for the purpose of computing and fixing his retirement pension, treats the compensation of such employee, in the annual aggregate thereof, as a yearly salary or compensation. This "salary" or compensation we are persuaded from the considerations to which we have above adverted, and others yet to be suggested, was intended by the framers of the charter, and by the people of the city of Sacramento in approving or ratifying the instrument, to constitute the criterion whereby the retirement pension of any employee of the city, whether his compensation is established upon a *per*

*diem* basis or upon that of a yearly or monthly salary, is to be computed.

The language of section 171 of the charter, viz., "one-half of the salary *paid him* one year prior to his retirement," is, it is true, not as clear as it could have been made by the exercise of a little care. In fact, it might, with some show of reason, when considered alone, be held that it was intended that the basis for the computation of the pension in the case of any employee should be the aggregate sum he had been paid for the nineteenth year of his service. But we are of the opinion that, by the use of said language, it was the intention to say that every such employee, upon his retirement at the end of the twentieth year of continuous employment in the service of the city, should receive a pension in an amount equal to one-half of what his compensation would total in the last of the twentieth year of such employment, counting every working day in the year, and this whether he has or has not actually performed the service required in his employment every working day of such year. To be more explicit: The words, "salary paid to him," in our opinion mean what the compensation which has been provided for the position or office or employment, whose duties he is required to perform, would amount to, computed upon the same basis as is a fixed or determinate yearly salary, limited, however, to the number of working days in the year. To give said language any other interpretation, or, it is perhaps better to say, to ascribe to it the meaning claimed for it by the respondents, would be to violate the spirit and frustrate, to the extent to which the section might thus be applied, the very design or the central purpose of the usual retirement pension schemes for civil public officers or employees, as above explained, since the effect of such an interpretation, if sanctioned, would, in many instances, inevitably lead to very unjust consequences. So far as anything to the contrary is disclosed by the record before us, the petitioner, as may, indeed, be the case as to any employee of the city, in every year of the nineteen consecutive years immediately preceding the twentieth year of his employment in the service of the city, put in every working day in the performance of the duties of his assignment, and yet, if the theory of respondents as to the

meaning of section 171 of the charter is to be accepted, the result would be that, notwithstanding those nineteen years of full and faithful service, the petitioner, having, during the twentieth year of such service and while engaged in performing the duties thereof, suffered a disability which necessarily forced him to be absent from his employment for several weeks or several months, would be entitled, as for his retirement pension, to no greater an allowance than what one-half of the aggregate sum which had actually been paid him for services actually performed during said year would amount to. But it is said that, on the other hand, the law before us, if construed as the petitioner understands its meaning and intent, would, in conceivable cases, work unjustly as against the city, an instance of which would be where an employee, in each of the nineteen years immediately preceding the twentieth year of his service had not actually rendered services every working day, or for the full year. Such a situation is apt to arise during the course of long service by any person in any field of activity, and that consideration is to be assumed to be within the contemplation of any well-framed pension system for those employed to discharge civil duties for a government. In other words, in creating a pension system, a government or a private corporation, do so with the expectation or anticipation that those for whose benefit such system has been established will, at some time during the long period of service which, under the system, entitles them to be retired on a pension, be unable to perform the duties of their employment, and where special provision is not contained in the law establishing the system to the effect that all working days upon which those employees whose compensation is fixed and paid upon a *per diem* basis have not actually performed services shall be excluded from consideration in computing their retirement pension, it is then to be assumed that it was the intention to include such days as among those constituting the basis for such computation. There is no such provision in the charter of the city of Sacramento; hence, the fixing of the amount of the pension to which the petitioner's intestate is entitled upon the basis of all the working days of the twentieth year of his employment, is only following the mandates of the law. There can be no unjust-

ness or injustice in following the law, either in letter or spirit. And the views thus expressed are supported by the consideration that the petitioner's intestate was, in all the years prior to the date at which he became eligible to retire upon a pension from disability, regularly employed for continuous service, and that the city, at all times while he was in its employment, where he was not actually performing the services required by his contract of employment as well as when engaged in performing those services, used or had control of his time. By this we intend to say that, so long as he was not discharged from the service of the city, or his absence from his employment was temporary only, he was, during such absence, as much an employee of the city as when actually he was engaged in performing services for the city, and it was upon the basis of his employment as so viewed that he is entitled to have his retirement pension fixed and allowed. Of course, we are not here holding that an employee of the city is entitled to be paid compensation by way of wages for those days during which he has performed no services. We can perceive no reason why he should. This declaration, though, is not inconsistent with the theory upon which we hold the retirement pension of such an employee should be fixed and allowed. The two propositions relate to different considerations. And it must be understood that, in the present discussion, we have in mind those employees only who are regularly employed for continuous service through the year, but who, from physical disability or other adventitious contingencies which may arise in the course of any employment, are not able to perform the services required of them every working day of the year, and not those employees, if any such there be, whose employments may be of such a nature that the performance of the services involved therein would be required for a brief period or at intervals only in each year, as to the eligibility of which class to pension benefits under the charter of Sacramento we have no opinion now to express.

Our conclusion is that the relief herein asked should be granted. Accordingly, the demurrer to the petition is overruled, and it is ordered that a writ of mandate be issued out of this court directed to respondents, commanding them to issue to the petitioner a warrant for the amount

stated in the petition as the amount due him for the retirement pension of his intestate.

Plummer, J., and Finch, P. J., concurred.