[Civ. No. 3108. Third Appellate District.—August 17, 1926.]

## D. L. KLENCH, Respondent, v. BOARD OF PENSION FUND COMMISSIONERS OF THE CITY OF STOCKTON et al., Appellants.

[1] MUNICIPAL CORPORATIONS—STOCKTON — PENSIONS —· ENACTMENT OF ORDINANCE — REFERENCE TO STATE LAW. — The governing board of the City of Stockton, in enacting Ordinance No. 283, relating to the establishment of a police relief and pension fund, and in expressly declaring in said ordinance that its enactment or passage was in pursuance of an act of the legislature entitled "An Act to Create a Police Relief, Health, and Life Insurance and Pension Fund," etc. (Stats. 1889, p. 56, as amended, Stats. 1897, p. 52), adopted said act or statute in its entirety and made it a part of said ordinance.

[2] ID. — PENSIONS — MUNICIPAL AFFAIRS — FREEHOLDERS' CHARTER — GENERAL LAW.—The matter of the fixing of the compensation and providing for the pensioning of policemen and firemen is strictly a municipal affair; and a city operating under a freeholders' charter is exempt from the operation of general laws with respect to all municipal affairs as to which such charter speaks, but a city cannot claim to be exempt from general laws relating to municipal affairs if there is no provision relating to such affairs in the charter under which it is acting.

[3] ID.—ADOPTION OF FREEHOLDERS' CHARTER—CONTINUANCE IN FORCE OF EXISTING ORDINANCES.—Section 174 of the freeholders' charter

---

2. Validity of ordinance providing for pensions for municipal employees, note, 37 A. L. R. 1162. See, also, 20 Cal. Jur. 997.

of the City of Stockton, adopted in 1911, having provided that all city ordinances, etc., "in force at the time this charter takes effect and not inconsistent with the provisions hereof are hereby continued in force until the same shall be duly amended or repealed," and said charter not having contained any provision in conflict with the provisions of Ordinance No. 283 theretofore adopted, and which related to the establishment of a police relief and pension fund, the provisions of said ordinance were continued in force.

[4] ID.—NEW ORDINANCE—TERMINATION OF PENSION RIGHTS—INTENT. Ordinance No. 698 of the City of Stockton, enacted subsequent to the adoption of its freeholders' charter in 1911, the provisions of which were substantially a duplication of the act of the legislature of 1889 (Stats. 1889, p. 56, as amended, Stats. 1897, p. 52), was not intended to terminate pension rights properly acquired under the pension law existing prior to and at the very time said ordinance was passed and became effective, but was simply intended as a direct recognition of the power which had been given to the city itself to establish a pension system for its police officers independently and regardless of any general law by which such city would be controlled in the matter of providing such a system in the absence of authority from its own charter for doing so.

[5] ID.—RIGHT TO PENSION—WHEN VESTED.—While no public officer or employee of the government is entitled as of right to a pension, when once the government establishes a retirement system for its officers and employees and provides the funds and means for administering it according to its design, any such officer or employee, when the conditions arise or occur upon which, under the rules and regulations of the system, he becomes eligible to be retired and placed upon the pension roll, and he, having met all the requirements entitling him to be so retired, has in fact been retired and enrolled upon the pension list, has then acquired a vested right to draw his pension and to receive as such whatever sum or sums of money may be provided for such purpose for officers or employees of the class to which he belongs.

[6] ID.—VESTED RIGHT TO PENSION—DESTRUCTION BY CITY COUNCIL.— Where a city police officer has become eligible to be retired, and he is accordingly legitimately retired and placed upon the pension roll, his right to be paid the money provided for police officers of his class or rank has become vested, and it does not lie within the power of the city council by ordinance, or by in-

5.  Vested right to pension, note, **Ann. Cas.** 1915C, 749. See, also, 20 **R. C. L.** 998; 21 **R. C. L.** 243.

6.  See 21 **Cal. Jur.** 408.

action with respect to the enforcement of such ordinance, in effect to destroy that right, until the conditions upon which he was retired and placed upon the pension roll have ceased to exist.

[7] ID.—AMENDMENT OR REPEAL OF PENSION LAW—VESTED RIGHTS.— It is within the power of the legislative body, state or local, to repeal, change, or modify a pension law passed for the benefit of its officers or employees, yet, until that is done, and there is a pension system, duly established by law, either by direct action of the legislature or by a local political subdivision under its charter, and the conditions or contingency happen upon which an officer or employee of the government becomes eligible to be placed upon the pension rolls and is actually so placed, such officer or employee then acquires a right to be paid the money provided for his relief under such law, of which he cannot legally be divested.

[8] ID. — ENACTMENT OF PENSION LAW — VESTED RIGHTS. — No vested right to a pension is created by the mere act of passing a law providing for pensions for public officers or employees, but such right vests only upon the happening of the contingency or event upon which the right thereto accrues.

[9] ID. — PAST SERVICES — PENSION — GRATUITY. — A pension law is a gratuity only where it is granted for services previously rendered which, at the time they were rendered, gave rise to no legal obligation.

[10] ID.—AMOUNT OF PENSION—UNCERTAINTY—LEGISLATIVE INTENT— STATUTORY CONSTRUCTION.—Conceding that the true meaning of the provision of section 4 of the Act of 1889, as amended in 1897, that a retired member of the police force shall be paid "a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held on such force at the date of such retirement," is uncertain or doubtful, then a question of legislative intent is presented, and that intention must be ascertained by a consideration of the language in connection with the context of the statute in its entirety, the object which said statute was designed to attain, and the obvious consequences which would follow a construction either way.

[11] ID.—LIBERAL CONSTRUCTION—FRUSTRATION OF PURPOSE.—Pension statutes serving a beneficial purpose are to be liberally construed, and where the language of a pension statute is of such ambiguity as to its true meaning as reasonably to afford two different and opposite conclusions, the one leading to its enforcement so that it will in full measure produce the beneficial results

---

7.   See 20 **Cal. Jur.** 998.

8.   See 20 **Cal. Jur.** 998, 999; 21 **R. C. L.** 243.

9.   See 20 **Cal. Jur.** 996.

11.   See 20 **Cal. Jur.** 997.

which its spirit and its purpose contemplate and its context will support, and the other to the frustration of its central purpose and *desideratum,* then the former construction must be given the statute or the particular language thereof the meaning of which is enshrouded in doubt.

[12] ID. — AMOUNT OF PENSION — LEGISLATIVE INTENT — SUBSEQUENT INCREASE OR DECREASE.—By the provision of section 4 of the Act of 1889, as amended in 1897, that a retired member of the police force shall be paid "a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held on such force at the date of such retirement," the legislature intended to declare that, on being retired under said act, a member of the police department should be paid a pension based upon the salary which may be paid to police officers of the rank held by him at the time of the retirement of such officer; and the amount of such pension is subject to increase or decrease, as the salary paid to police officers of that rank is increased or decreased.

---

(1) 43 C. J., p. 813, n. 55, 73.   (2) 43 C. J., p. 179, n. 43, 44, p. 293, n. 10.   (3) 43 C. J., p. 813, n. 75.   (4) 43 C. J., p. 813, n. 76. (5, 6, 7) 43 C. J., p. 818, n. 65.   (8) 43 C. J., p. 813, n. 57, p. 818, n. 65.   (9) 43 C. J., p. 813, n. 57, p. 817, n. 41.   (10) 36 Cyc., p. 1106, n. 30, p. 1110, n. 54, p. 1111, n. 69, p. 1128, n. 54.   (11) 43 C. J., p. 813, n. 64.   (12) 43 C. J., p. 813, n. 65, 66.

APPEAL from a judgment of the Superior Court of San Joaquin County.   C. W. Miller, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. Le Roy Johnson and Clarence A. Grant for Appellants.

William A. Kelly, Brittain & Weise and Louttit, Stewart & Louttit for Respondent.

HART, J.—The court below granted a peremptory writ of mandate to compel the appellants, as members of the Pension Board of the City of Stockton and the City Auditor, as such, to allow, audit, and pay petitioner certain sums of money alleged to be due him from said city as for a pension as a duly retired member of the police department of said City of Stockton, holding at the time of such retirement the rank of patrolman.   The appeal is

by appellants from the judgment entered upon an order overruling a demurrer to the petition. The following brief general statement of the facts is taken from the opening brief of the appellants:

"The petitioner herein was a member of the police force of the City of Stockton on December 15, 1904, and prior thereto. In 1904 he incurred a disability in line of duty and was retired, pursuant to the Pension Law of 1889 and amendments thereto. (Stats. 1889, p. 56.) By virtue of the provisions of that Act, as amended in 1897, he was, as such retired officer or pensioner, entitled 'during his lifetime to a yearly pension equal to one-half of the amount of salary attached to the rank he may have held on such police force on the date of such retirement.' (Stats. 1897, p. 52.) The pay of the petitioner at the time of his retirement was $75.00 per month. The petitioner at the time of his retirement held the rank of patrolman. The salary of the rank of patrolman has at various times since the retirement of the petitioner herein been increased until at the present time a patrolman who has served for five years on the Stockton police force receives a salary of $162.00 per month. The petitioner herein had served over five years at the time of his retirement, and the disability which he suffered in 1904 has continued since then, and now exists."

The petitioner, it appears, when retired in 1904, was allowed a pension of $37.50 per month, said amount being one-half the monthly salary paid a police patrolman of said city. This amount he continued to receive, although several increases in the monthly compensation of patrolman had in the meantime been made, until August 1, 1921, at which time the pay of patrolman was increased to $150 per month, and from that date and until the present proceeding was instituted he has been paid $75 per month or one-half of the amount to which the pay of patrolman was increased on the first day of August, 1921. At the present time the salary of a patrolman of the City of Stockton is $162 per month.

The petitioner contends, basing such contention upon reasons hereinafter to be examined, that, as the compensation of patrolman engaged in active service as such is or may be changed by the city council, either by increasing

or diminishing the same in amount, the amount of the pension to which he is entitled as a duly retired patrolman is likewise changed. In other words, as to his own case, his contention is that whatever increase which has been made or any increase which may be made in the future or at any time during the period of his retirement in the compensation of patrolmen in active service constitutes the basis for the fixing of his pension as a retired patrolman. Upon this theory he, by this proceeding, seeks to secure "back pay," claiming, obviously, that he is entitled to be paid by the City of Stockton the difference between what he has received and what he would have been paid had his pension been at all times regulated upon the basis above suggested.

On the other hand, the appellants contend: "1. That the adoption of the freeholders charter by the City of Stockton in the year 1911 automatically terminated the right of the petitioner thereafter to draw a pension; 2. That while in 1919 a pension ordinance was adopted under the freeholders charter, no affirmative action was taken by the council under said ordinance to place the petitioner upon the pension list; 3. That the right of the petitioner to draw his pension is not a vested right and therefore terminated in 1911 with the adoption of the freeholders charter; 4. That the amount of the pension to be paid to the petitioner does not vary with the salary attached to his rank as a patrolman." In the consideration of points 1 and 2, in the order in which the points made by appellants are above presented, it will be necessary to have before us the history of the legislation relating to the matter of pensioning police officers of said city.

[1] At the time that the petitioner was retired, in the year 1904, the City of Stockton was, as a municipal corporation, controlled by a charter adopted in pursuance of the provisions of a general law, passed by the legislature of the year 1850, entitled "An Act to Provide for the Incorporation of Cities." (Stats. 1850, p. 87.) The charter so adopted contained no provisions authorizing the payment of pensions to police officers. In the year 1901, however, the governing board of the City of Stockton, acting under and in pursuance of the provisions of a general law of the state (Stats. 1889, p. 56, as amended by the

Act of 1897, p. 52, *supra*), entitled "An Act to Create a Police Relief, Health, and Life Insurance and Pension Fund in the several . . . cities . . . and towns of the state," passed an ordinance, designated as and numbered "Ordinance No. 283," providing for the raising of revenue and thus the establishment of a "police relief and pension fund," the same to be used, as its designation implies, for the relief and pension of police officers upon the happening of certain conditions specified in the Pension Act of 1889. The first section of said ordinance expressly declares that its enactment or passage was in pursuance of the provisions of said act of the legislature of 1889, and thus by such reference said act or statute was in its entirety adopted into and made a part of said ordinance. (*Cole* v. *City of Los Angeles,* 180 Cal. 617, 623 [182 Pac. 436].)

Section 4 of said Act of 1889, as amended by the Act of 1897, which section became, in the manner just indicated, a part of said Ordinance No. 283 of the City of Stockton, provided as follows: "Whenever any person, while serving as a policeman in any such county, city and county, city, or town, shall become physically disabled by reason of any bodily injury received in the immediate or direct performance or discharge of his duty as such policeman, said board may, upon his written request, or without such request, if it deem it to be for the good of said police force, retire such person from said department, and order and direct that he shall be paid from said fund, during his lifetime, a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held on such police force at the date of such retirement, but on the death of such pensioner his heirs or assigns shall have no claim against or upon such police relief or pension fund; *provided,* that whenever such disability shall cease such pension shall cease, and such person shall be restored to active service at the same salary he received at the time of his retirement."

Ordinance No. 283 remained in full force and effect until the year 1911, when the City of Stockton adopted a freeholders' charter. (Stats. 1911 (Ex. Sess.), p. 254 et seq.) Section 174 of article XVI of said charter provided: "All lawful city ordinances, resolutions and regulations in force

at the time this charter takes effect and not inconsistent with the provisions thereof are hereby continued in force until the same shall be duly amended or repealed."

Section 59 of article VII of said charter authorized the establishment of "a pension and relief fund for policemen and firemen." The city council, while not passing an ordinance in pursuance of the provisions of the last-mentioned section of the freeholders' charter, did, as we have seen, on June 20, 1919, pass an ordinance, designating and numbering the same as "Ordinance No. 698," whereby provision was made for the pensioning of members of the police and fire departments of said city. The provisions of this ordinance, in so far as members of the police department were concerned, followed, substantially, the provisions of the state law.

In the year 1923, the city adopted a new freeholders' charter, whereby a "city manager" form of government was established. (See Stats. 1923, p. 1321 et seq.) This charter, in section 58, article V, empowers the city council to provide a pension and relief fund for firemen and other officers. Said charter (sec. 6, art. XXX) also contains this provision: "All ordinances, resolutions, and regulations in force at the time this charter takes effect, and not inconsistent therewith, are hereby continued in force until amended, repealed or rescinded."

In October, 1923, the city council passed Ordinance No. 854, which provides for the establishment, maintenance, and administration of a "Relief, Health, Life Insurance and Pension Fund for the members of the Police and Fire Departments of the City of Stockton." This ordinance, whose provisions are substantially the same as those of the state law as well as those of Ordinance No. 698, superseded, of course, the last-named ordinance, and is at the present time the existing local law providing for the pensioning of members of the police department of said city.

It is not disputed that from the time that the petitioner was retired in 1904 until the date of the adoption by the City of Stockton of the freeholders' charter of 1911, said city, in paying the petitioner a retirement pension, remained within the power with which it was invested by the Police Relief and Pension Act of 1889 and the amendment thereto in 1897. Indeed, the appellants do not con-

test that proposition. Their position is, though, as we have seen, that the adoption of the freeholders' charter in the year 1911 by said city operated, *ipso facto,* to "terminate the right of the petitioner thereafter to draw a pension." This proposition necessarily presupposes that the result of the adoption of said freeholders' charter was entirely to abrogate the effect of any law, in so far as it had been applied to the City of Stockton, under the provision of which said city had theretofore maintained and administered a police pension system, and proceeds from the theory that, since by article XI, section 6, of the constitution, municipal corporations under a freeholders' charter are, as to "municipal affairs," declared to be wholly exempt from the operative effect of general laws, upon the adoption by the City of Stockton of the freeholders' charter of 1911 any general law providing for the regulation of any subject or matter falling within the meaning and scope of the phrase "municipal affairs," and by and under the authority of which the City of Stockton had administered certain of its "municipal affairs," immediately ceased to apply to and automatically wiped out any ordinance or resolution passed or adopted by said city by the authority of said general law upon the adoption of said charter. **[2]** It is to be conceded, as counsel for the appellants declare to be true, that the matter of the fixing of the compensation and providing for the pensioning of policemen and firemen is strictly a "municipal affair." (*Popper* v. *Broderick, as Auditor, etc.,* 123 Cal. 456 [56 Pac. 53]; *Burke* v. *Board of Trustees, etc.,* Cal. App. 235 [87 Pac. 421].) It is also to be conceded that the settled rule is that a city operating under a freeholders' charter is exempt from the operation of general laws with respect to all "municipal affairs" as to which such charter speaks. (See sec. 6, art. XI, Const.) On the other hand, the converse of that proposition is equally well settled, viz.: That "a city cannot claim to be exempt from general laws relating to municipal affairs if there is no provision relating to such affairs in the charter under which it is acting." (*Fragley* v. *Phelan,* 126 Cal. 383, 395 [58 Pac. 923]; *Civil Center Assn. of L. A., etc.,* v. *Railroad Com.,* 175 Cal. 441, 445 [166 Pac. 351].) **[3]** But a complete answer to appellants' point 1 is afforded

by the saving clause (sec. 174) of the charter of 1911 to the effect that all city ordinances, etc., "in force at the time this charter takes effect and not inconsistent with the provisions hereof are hereby continued in force until the same shall be duly amended or repealed." Manifestly, the purpose of such provision, as is true of such a provision in any new organic law adopted by a political entity, is to preserve intact, until there may be afforded time and opportunity for the amendment or repeal of the same, if such amendment or repeal be found necessary, the statutory or local legislative laws in force at the time such organic law was adopted or became operative, and which are essential to the proper administration of the affairs of the government for which the new fundamental law was adopted. In other words, the framers of the charter of 1911, to prevent what well might be termed a dangerous hiatus in the administration of the governmental affairs of the City of Stockton, properly inserted, as is generally done in all cases of the making of a new organic law for a government, the saving clause above referred to. Necessarily, that provision of said charter embraced or included all valid ordinances, etc., existing at the time the new organic law went into effect and not inconsistent with any of its (said charter's) provisions. As we have above pointed out, the ordinance adopted by the City of Stockton in the year 1901, under the terms of which the petitioner was retired, was founded on the Statute of 1889 authorizing the pensioning by incorporated cities of members of their police departments, there not being in the charter under which the City of Stockton was then operating any provision for the allowance and payment of such pensions. As further likewise pointed out, the city council, in adopting that ordinance, necessarily adopted and made a part thereof the provisions of said Statute of 1889. In other words, the provisions of said statute of necessity became a part of said ordinance by reference. There was nothing in the provisions of the ordinance inconsistent with any of the provisions of the charter of 1911. Indeed, said ordinance as so adopted was in harmony with the spirit and the intent of said charter, in so far as the subject matter thereof was concerned, as evidenced by the power expressly granted by the charter to the governing

board of said city to provide for a retirement pension for policemen and firemen.

The point secondly urged by appellants is devoid of merit. [4] The contention involved in that point is, as seen, that upon the adoption in 1919 by the council of the City of Stockton under the charter of 1911 of ordinance No. 698, providing for a retirement pension for policemen, it was necessary for the council, to preserve petitioner's status as a retired pensioner, to take some affirmative action to that end. This contention, as we view it, also involves the question, suggested under the head of point No. 3, whether the petitioner's right to a pension was a vested right. We have shown that, from 1901 to the year 1919, the City of Stockton, in so far as its police pension system was concerned, operated under the provisions of a general law of the state, and that it was by authority of the system so adopted that petitioner was retired on a pension as a patrolman and continued, without a break, as a pensioner thereunder. The provisions of Ordinance No. 698, as seen, were, substantially, nothing more than a duplication of the provisions of the state law, and, while it is to be granted that its passage was in pursuance of the power granted to the city council by the charter of 1911 to adopt and pass a police pension system for said city, the intention thereof was merely to perpetuate under the direct authority of the charter the policy of the city which had existed continuously from the year 1901 down to the date of the passage of said ordinance to maintain and administer a pension system for the benefit of the members of the police department of said city or as in part compensation of such members for their services as such. In other words, Ordinance No. 698 was not intended to terminate rights properly acquired under the pension law existing prior to and at the very time it (said ordinance) was passed and became effective, but was simply intended as a direct recognition of the power which had been given to the city itself to establish a pension system for its police officers independently and regardless of any general law by which such city would be controlled in the matter of providing for such a system in the absence of authority from its own charter for doing so. Ordinance No. 698 gave the petitioner nothing that he did not already

have, and it would amount to what well may be expressed as a solecism in logic to hold, as we are in effect here asked to hold, that the effect of the passage of a new ordinance or statute designed to preserve the right to enjoy a right created and its exercise vouchsafed by a preceding ordinance or law and existing when said new ordinance or statute was passed, would be to destroy the enjoyment of such right rather than to preserve it.   [5] Moreover, while no public officer or employee of the government is entitled as of right to a pension. (*Douglas* v. *Pension Board of the City of Sacramento*, 75 Cal. App. 335 [242 Pac. 756]), still, when once the government establishes a retirement pension system for its officers and employees and provides the funds and means for administering it according to its design, any such officer or employee, when the conditions arise or occur upon which, under the rules and regulations of the system, he becomes eligible to be retired and placed upon the pension roll, and having met all the requirements entitling him to be so retired, has in fact been retired and enrolled upon the pension list, he has then acquired a vested right to draw his pension and to receive as such whatever sum or sums of money may be provided for such purpose for officers or employees of the class to which he belongs.   [6] The petitioner here, as the admitted averments of the petition disclose, had become eligible, under the terms of the Pension Act of 1889, to be retired. All the conditions upon which his retirement on a pension could be effected had occurred, and he was accordingly legitimately retired and placed upon the pension roll. His right to be paid the money provided for police officers of his class or rank had become vested, and hence it does not lie within the power of the city council by ordinance, or by inaction with respect to the enforcement of such ordinance, in effect to destroy that right, until the conditions upon which he was retired and placed upon the pension roll have ceased to exist. (*Kavanagh* v. *Board of Police Commrs.*, 134 Cal. 50, 52 [66 Pac. 36]; *Cohrn* v. *Henderson*, 19 Cal. App. 90, 91 [124 Pac. 1037]; *Sheehan* v. *Board of Police Commrs.*, 47 Cal. App. 29, 34 [190 Pac. 51]; *O'Dea* v. *Cook et al.*, 176 Cal. 659, 661 et seq. [169 Pac. 366].)   The cases of *Pennie* v *Reis*, 80 Cal. 266 [22 Pac. 176], and *Clarke* v. *Reis*, 87

Cal. 543 [25 Pac. 759], involved situations entirely different from that presented here. In the Pennie case the statute authorizing insurance benefits for the widow or family of police officers was repealed before the death of the officer whose legal successor was attempting enforcement of the claim set up under the repealed statute. In the Clarke case the officer was dismissed from the department before the happening of the contingency upon which, had it happened prior to his dismissal, he would have been entitled to a pension. In the Pennie case it was held, as also it was held by the supreme court of the United States to which that case was taken (*Pennie* v. *Reis*, 132 U. S. 464 [33 L. Ed. 426, 10 Sup. Ct. Rep. 149, see, also, Rose's U. S. Notes]), that the police officer concerned therein acquired no vested right in the moneys provided for the payment of police pensions or life insurance and that no such right could be acquired "until the event happens upon which the money was to be paid." It was also so held in the Clarke case. These cases, however, at least inferentially support the view that, when the event or the contingency happens upon which the officer is entitled to receive the money provided for pensioning him as a retired officer, then, in that case, the right to be paid such money becomes and is a vested right. **[7]** It is to be conceded, however, that it is within the power of the legislative department of the government, state or local, to repeal, change, or modify a pension law passed for the benefit of its officers or employees, yet, until that is done, and there is a pension system, duly established by law, either by direct action of the legislature or by a local political subdivision under its charter, and the conditions or contingency happen upon which an officer or employee of the government becomes eligible to be placed upon the pension rolls and is actually so placed, such officer or employee then acquires a right to be paid the money provided for his relief under such law of which he cannot legally be divested.

The Minnesota cases of *Stevens* v. *Fire Dept. Relief Assn.*, 124 Minn. 381 [50 L. R. A. (N. S.) 1018, 145 N. W. 35], and *Gibbs* v. *Fire Dept. Relief Assn.*, 125 Minn. 174 [Ann. Cas. 1915C, 749, 145 N. W. 1075], are cited as authorities for the position that pensions provided for police or other officers are a mere gratuity and can, there-

fore, be taken away at any time the law-making power sees fit to take such a course. The case first mentioned does not strictly so hold. It is therein stated that pensions allowed to disabled firemen or policemen, their disability occurring while they were pursuing the line of their duties as such, are unlike pensions granted by the general government to soldiers, in that the latter constitute a mere gratuity or bounty which may be taken away at any moment, citing a number of United States supreme court cases. In the Stevens case the court said: "We, therefore hold that the pension in question (for disabled firemen) is not, as contended by the appellant, a mere gratuity to be granted or withheld at the whim of the association," referring to the association created by the pension law of the state of Minnesota to administer the provisions of that law within the city of Minneapolis. The Gibbs case also had under consideration a law authorizing a pension to be paid to the widow or family of a fireman passing out of this life while he was connected with and performing his duties as a member of the city fire department. It is therein held that pensions provided for and paid to officers or employees (or their widows or their beneficiaries) of a government upon the happening of certain contingencies are mere gratuities, or bounties "springing from the graciousness and appreciation of sovereignty," and that, "as against the state there is no vested right in the pension accruing in the future from month to month." **[8]** It is true, of course, as we have before stated, no vested right to a pension is created by the mere act of passing a law providing for pensions for public officers or employees, since, as pointed out, a right to such pension can vest only upon the happening of the contingency or event upon which the right thereto accrues. The conclusion in the Minnesota case secondly above mentioned holding that a pension such as the one being considered here is a gratuity is contrary to the theory of our own cases, which hold that a pension of the character of the one with which we are now dealing "is not a gratuity or a gift," as is declared by the supreme court in *O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366]. "If it were," continues the court in that case, "all the provisions pertaining to it would be void under the constitution of the state.

(Art. IV, sec. 31; *Taylor* v. *Mott,* 123 Cal. 497 [56 Pac. 256].) [9] A pension is a gratuity only where it is granted for services previously rendered which, at the time they were rendered, gave rise to no legal obligation. (*United States* v. *Teller,* 107 U. S. 64 [27 L. Ed. 352, 2 Sup. Ct. Rep. 39]; *Mahon* v. *Board of Education,* 171 N. Y. 263 [89 Am. St. Rep. 810, 63 N. E. 1107]; *State* v. *Love,* 89 Neb. 149 [Ann. Cas. 1912C, 542, 34 L. R. A. (N. S.) 607, 131 N. W. 196].)'' And herein lies an important distinction between pension laws which, like those we now have before us, provide for pensions for services performed for the government or disabilities occurring while rendering such services after the law has been passed, and a pension system designed to care for or reward soldiers for disabilities suffered or services rendered in the past while in the military service of the country. As before suggested, where, as in the former case, ''services are rendered under the pension statute, the pension provisions become a part of the contemplated compensation for those services and so in a sense a part of the contract of employment itself.'' (*O'Dea* v. *Cook, supra;* see, also, *Hammit* v. *Gaynor,* 82 Misc. Rep. 196 [144 N. Y. Supp. 127]; *State* v. *Love, supra; People* v. *Abbott,* 274 Ill. 380 [Ann. Cas. 1918D, 450, 113 N. E. 696].)

Thus have we considered and disposed of point 3, involving the question whether the petitioner acquired a vested right to a pension under the pension system maintained and administered in the City of Stockton since the year 1901, when first it invoked the application of the provisions of the general pension statute of 1889, not that we have regarded the determination of that question absolutely essential to a decision herein in favor of the petitioner, since we are convinced, as we think we have shown, that the City of Stockton has continuously and uninterruptedly operated under a valid pension system for all the years from 1901, and that petitioner, having been regularly retired and placed on the pension roll in 1904, was and is entitled to the benefits of said system, but because the question is of singular importance in that, to our minds, some misapprehension of the import of our decisions regarding the proposition seems to exist.

We now reach the all-important legal issue presented by this appeal, viz.: Whether the basis upon which the amount of the petitioner's pension is to be computed varies with increases which may be made from time to time in the salaries or compensation of police patrolmen of said city or must remain as fixed at the time of his retirement at one-half of the salary then allowed and paid to officers of his rank, to wit, patrolmen.

In determining the question thus propounded, we are to keep in mind the italicized part of the following language of section 4 of the statute of 1889, as amended in 1897 (the full text of the said section is hereinabove quoted), viz.: "Whenever any person, while serving as a policeman in any such . . . city . . . shall become physically disabled by reason of any bodily injury, . . . said board may, . . . retire such person from said department, and order and direct that he shall be paid from said fund . . . a yearly pension equal to one-half of the *amount of salary attached to the rank which he may have held on such force at the date of such retirement. . . .*"

[10] It is contended that the italicized language is so ambiguous as to obscure its true meaning or the legislative intent at the bottom thereof. Conceding this to be true, the question then is: What did the legislature intend to say by the use of said language? In other words, if the meaning of the language as it was intended to be understood by the legislature be uncertain or doubtful, then a question of legislative intent is presented and that intention must be ascertained by a consideration of the language in connection with the context of the statute in which the language is employed in its entirety, the object which said statute was designed to attain, and the obvious consequences which would follow a construction either way. (*Douglas* v. *Pension Board of the City of Sacramento et al.,* 75 Cal. App. 335 [242 Pac. 756].) [11] It is said in *O'Dea* v. *Cook, supra:* "It is a firmly established principle of judicial construction that pension statutes serving a beneficial purpose are to be liberally construed. (*Walton* v. *Cotton,* 60 U. S. 355 [15 L. Ed. 658]; *Hanscom* v. *Malden etc. Gas Light Co.,* 220 Mass. 1 [Ann. Cas. 1917A, 145, 107 N. E. 426].)" To the same effect are *Hurley* v. *Sykes,* 69 Cal. App. 310, 317 [231 Pac. 748]; *Jackson* v. *Otis,* 66 Cal. App. 357, 360 [225 Pac.

890]; *Whitehead* v. *Davie*, 189 Cal. 715, 719 [209 Pac. 1008]. In *Hurley* v. *Sykes*, Presiding Justice Tyler, writing the opinion, says, speaking of the San Francisco charter provisions for the pensioning and relief of members of the fire department of said city: "The spirit of these provisions is to protect all members of the fire department in the benefits which the fund insures, and they should . . . be interpreted on broad principles. Any other construction would result in a limitation of the beneficial provisions of the act, and render nugatory the manifest intention of the lawmaking power and do violence to its apparent purpose." Of course, these rules of statutory construction, as applied to pension laws, are of no consequence where the language itself of the statute is sufficiently clear or free from obscurity as to reasonably remove all doubt as to its meaning or the legislative intent with respect thereto. But, while we think that section 4 of the statute of 1897, or the language thereof which is italicized in this opinion, clearly enough indicates that the word "salary" was intended to refer to the "rank" of the retired patrolman rather than to the *time* at which he may be retired under the statute, nevertheless the same result would follow if its interpretation or construction were required and controlled, as it should be controlled, by the liberal rules of statutory construction above referred to as applicable to pension laws, and, further, by a consideration of the rule that where the language of a pension statute is of such ambiguity as to its true meaning as reasonably to afford two different and opposite conclusions, the one leading to its enforcement so that it will in full measure produce the beneficial results which its spirit and its purpose contemplate and its context will support, and the other to the frustration of its central purpose and *desideratum,* then the former construction must be given the statute or the particular language thereof whose meaning is enshrouded in doubt.

[12] We have said that it is our belief that the word "salary" as used in section 4 of said act was intended to refer to the rank of the retired police officer and not to the time at which he was retired. In other words, the section as phrased seems clearly enough to indicate that what the legislature intended thereby to declare was that, on being retired under said act, a member of the police department should

be paid a pension based upon the salary which may be paid to police officers of the *rank held by him at the time of the retirement* of such officer.  This conclusion is directly supported by the case of *Rumetsch* v. *Davie*, 47 Cal. App. 512, 514 [190 Pac. 1075], wherein it is said by Justice Brittain, speaking for the court: "While he is on the retired list, it would seem to be entirely consistent with the language, as well as the purpose, of section 95, that he should receive as pension one-half the amount he would receive as a corporal if on active service.  This court has no hesitation in determining that the amount of the pension is fixed by the salary attached to the rank of the retired man at the time of retirement, provided he held that rank for the period of one year prior to the date of retirement."  Inferentially, the same view is entertained by the case of *Whitehead* v. *Davie*, 189 Cal. 715, 722 [209 Pac. 1008].  Furthermore, the conclusion we have arrived at regarding the meaning and intent of the language of the section in question is fortified, indeed, it seems to us, conclusively settled, by two significant considerations, the one arising from the pension law itself under which the City of Stockton is operating and has practically operated since the year 1901, and the other arising from a judicial construction of the nature, in legal effect, of the pension granted by pension statutes.  The first is the offspring of the provision of section 4 of the statute of 1897, also incorporated into the Ordinance No. 698 as well as into the present city ordinance (No. 854) to the effect that when the physical disabilities suffered by the pensioner shall cease such pension shall cease, and such person be restored to active service as a member of the force of the rank held by him when retired.  The second is the declaration by the supreme court in a number of cases, notably the case of *O'Dea* v. *Cook, supra,* to the effect that a pension granted to officers and employees of the government for services yet to be performed (and such statutes granting such pensions always operate prospectively) constitutes a part of the compensation of such officers and employees and as such in a sense enters into the contract whereby such officers and employees are employed.  By the first of these considerations it is unquestionably established that, notwithstanding his retirement, a patrolman retired under the pension law of 1889 and the later statute and ordinances

perpetuating the provisions thereof, is still a member of the police department and is subject to such rules of the department as apply in such a case.   From the second, considered in the light of the first, it irresistibly follows that a retired patrolman is subject to any changes which may be made in the compensation of patrolman; that, therefore, an increase made at any time by the proper city authorities in the salary to be paid to such police officer or other members of the department after and pending the retirement of a member of such department under the pension laws operates to correspondingly augment the amount or basis upon which the pension compensation of the retired officer is to be computed. The conclusion thus announced coincides with the theory and the object of all laws authorizing the payment of pensions to officers and employees in the civil department of the government retired from active service by reason of the happening of contingencies or events which render such retirement conducive to the best interests of the department of public service with which they have for the prescribed time been connected.   One of the objects thus to be attained "is to encourage those public officers and employees who have by experience or otherwise demonstrated peculiar fitness for the performance of the public services to which they have been assigned to continue in the service of the government and at all times faithfully discharge the duties involved in such service.   The hope held out for future additional reward or compensation for their public services to that which they receive concurrently with the period during which they are actually and actively engaged in performing such services is conducive to uniform faithfulness to and efficiency in discharging the duties which their offices or employments have exacted."   (*Douglas* v. *Pension Board of the City of Sacramento,* 75 Cal. App. 335 [242 Pac. 756].) Another consideration in the matter of providing pensions for retired civil officers, and not the least in importance, is to pay such retirement compensation as will provide for the retired officer or employee means of proper subsistence.   An increase in the cost of living always justly calls for an increase in the compensation of those who labor to earn a livelihood, and this proposition obviously applies as well to those who labor for the public as those engaged in private employment, and, of course, equally so to those who, for rea-

sons prescribed by law, have been retired from a public service to which they devoted many years of faithful adherence. We may add the observation that members of police and fire departments of a city are required as such to perform public duties always beset by imminent perils to their lives and limbs—indeed, more than any other officers or employees engaged in the civil department of the public service. It is, therefore, not at all strange but gratifying to find that the government, as in the present instance, so far as police officers are concerned, has been just enough to make such provision for the compensation of such officers or employees as affords not only a fair reward to them while they are actively performing their public duties, but enough to insure them, according to possible varying conditions as to the cost of living, against want or penury after they have been compelled from their accumulated years or from physical disabilities incurred while in discharge of their public duties to "lay down the shovel and the hoe."

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 14, 1926.