LANCASTER SEA BEACH IMPROVEMENT COMPANY, Appellant, v. THE CITY OF NEW YORK, Respondent.

Tax — assessment and levy of taxes — statutory provisions must be complied with if mandatory and designed for the protection of the taxpayer — when directory provisions relating to procedure, only, may be omitted without invalidating tax.

1. The power to assess property for the purpose of taxation and to levy taxes is strictly statutory. A substantial compliance with those statutory provisions, defining and regulating the exercise of it, which are of the substance of the procedure and are designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the validity of the tax. Those provisions are mandatory. Other provisions, however, are intended to instruct and guide the assessing officers and secure regularity and uniformity of procedure, and are directory and not mandatory unless accompanied by negative or restrictive words importing that the acts prescribed shall not be done in any other manner or time than that designated. The failure to comply strictly with a directory provision does not render the assessment or tax invalid.

2. Alleged errors and omissions in the assessment of certain real estate in the city of New York examined, and *held*, that the statutory requirements with reference thereto (L. 1892, ch. 542; L. 1897, ch. 378; L. 1909, ch. 62; Cons. Laws, ch. 60) were substantially complied with.

*Lancaster Sea Beach Improvement Co.* v. *City of New York*, 161 App. Div. 469, affirmed.

(Argued October 20, 1914; decided January 26, 1915.)

1

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 28, 1914, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward M. Grout* and *James F. McKinney* for appellant. The Appellate Division was right in overruling the fourth finding of fact and in finding in lieu thereof that the map upon which plaintiff's premises were attempted to be shown was not prepared pursuant to chapter 542 of the Laws of 1892, but was an old map used pursuant to authority of said law and the provisions of section 891 of the Greater New York charter. (L. 1882, ch. 410, § 815; L. 1897, ch. 370, §§ 891, 1581; L. 1899, ch. 542.) Assuming as a matter of fact that plaintiff's evidence fell short of showing that the reduction of the assessment from $141,000 to $120,000 was made by Commissioner Sheehy alone, and assuming as a matter of fact the commissioners of taxes and assessments orally, separately or together, at a stated meeting, approved and orally ordered the said reduction, said act of the board or of its individual members is not sufficient in law to constitute the reduced amount as a legal assessment against plaintiff's premises. (*Ætna Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 331; *Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Bruscher* v. *Vil. of Port Chester*, 101 N. Y. 240; *Leonard* v. *Lent*, 43 Wis. 83; *Cammeyer* v. *United Lutheran Church*, 2 Sandf. Ch. 186; *Johnson* v. *Sage*, 44 Pac. Rep. 641; *Phillips* v. *Welts*, 40 Wash. 501; *Dyer* v. *Brogan*, 70 Cal. 136; *Troy* v. *Atchison, etc., R. R. Co.*, 13 Kans. 70; *Barnes* v. *Alexander City*, 89 Ala. 602; *Teft* v. *Size*, 10 Ill. 432; 2 Dillon on Mun. Corp. [5th ed.] vol. 4, § 557; *Larned* v. *Briscoe*, 62 Mich. 393.) The annual record did not

sufficiently describe the assessed premises according to law, and the said assessment was void. (*Ventriniglia* v. *Eichner*, 155 App. Div. 236; *Rupert* v. *Vil. of North Pelham*, 139 App. Div. 302; *People ex rel. Nat. Park Bank* v. *Metz*, 141 App. Div. 600.) The assessment roll as prepared by the commissioners of taxes and assessments did not correspond to the annual record and did not contain the same description, or a sufficient description, of plaintiff's premises, and was void. (*Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342.) The conceded fact that the tax against plaintiff's premises was not placed in a fifth column on the assessment roll as prescribed by the charter, was a jurisdictional defect rendering the tax void. (*Bennett* v. *Robinson*, 42 App. Div. 412.)

*Frank L. Polk*, Corporation Counsel (*Curtis A. Peters* of counsel), for respondent. The Appellate Division has unanimously affirmed the finding of fact that the tentative assessment made by the deputy tax commissioner in the sum of $141,000 against plaintiff's property was duly reduced to and fixed at the sum of $120,000 by the board of taxes and assessments of the city of New York and the appellant is foreclosed from disputing that question of fact in this court. (*Ryan* v. *Franklin*, 199 N. Y. 347.) The assessment of $120,000 against appellant's property contained in the assessment roll for 1899 is correct and legal on its face and plaintiff has introduced no evidence to show that the board of taxes and assessments did not properly reduce the tentative assessment of $141,000 to the sum of $120,000. (*City of New York* v. *Vandeveer*, 91 App. Div. 303; *Coleman* v. *Shattuck*, 62 N. Y. 348; *People ex rel. Thompson* v. *Feitner*, 168 N. Y. 441; *Brooklyn El. R. R. Co.* v. *City of Brooklyn*, 16 Misc. Rep. 416; 11 App. Div. 127; *People ex rel. Manhattan Ry. Co.* v. *Barker*, 152 N. Y. 417; *People ex rel. Citizens Lighting Co.* v. *Feitner*, 81 App. Div. 118.) The "Annual Record" and the assessment rolls were

made in compliance with the provisions of the proper statutes and the assessments and taxes contained therein were legal. (*City of Rochester* v. *Bloss*, 185 N. Y. 42; *People ex rel. Myers* v. *Moynahan*, 130 App. Div. 46; *Haight* v. *Mayor, etc.*, 99 N. Y. 280; *Quaranto* v. *Moynahan*, 148 App. Div. 744; 205 N. Y. 590; *Kane* v. *City of Brooklyn*, 114 N. Y. 593; *People ex rel. M. & M. R. Co.* v. *Garmon*, 63 App. Div. 530; *White* v. *Wheeler*, 51 Hun, 573; *Albany & W. S. R. R. Co.* v. *Town of Canaan*, 16 Barb. 244; *People ex rel. Hutchinson* v. *O'Brien*, 53 Hun, 580; *B. & S. L. R. R. Co.* v. *Supervisors*, 48 N. Y. 93.) The fact that the taxes in question were not contained in the fifth column of the assessment roll did not invalidate such taxes. (*Haight* v. *Mayor, etc.*, 99 N. Y. 280; *Bennett* v. *Robinson*, 42 App. Div. 412; *People ex rel. M. & M. R. R. Co.* v. *Garmon*, 63 App. Div. 530; *Parish* v. *Golden*, 35 N. Y. 462; *Litchfield* v. *City of Brooklyn*, 13 Misc. Rep. 693; *People ex rel. Pike* v. *Barker*, 86 Hun, 283.)

COLLIN, J. The action is to recover from the city of New York the sum paid by the plaintiff corporation in 1912 to it as a tax upon real estate for the year 1899, and the interest thereon. The payment was under the duress of an advertised sale of the property for the tax. The plaintiff seeks a recovery upon the ground that the tax was void because the property was not assessed, for the purpose of taxation, as the law required. The Appellate Division unanimously affirmed the facts as found by the trial court with the exception of one finding which received a modification having support in the evidence. We must, therefore, deem the facts as thus established conclusive.

The real estate was within the city of New York and the system through which it could have been validly assessed in 1899 for the purpose of taxation was prescribed, primarily, by the relevant provisions of the charter

of the city (Laws of 1897, ch. 378) and, secondarily, by the enactments of the Tax Law then in force (Laws of 1896, ch. 908, as amended) not in conflict with those provisions and essential to the completeness of the system. Under the provisions of the charter, in 1899 the board of taxes and assessments, consisting of five persons, were the assessing officers. Through the five years last preceding the creation in 1897 of "Greater New York" city, a statute (Laws of 1892, ch. 542) had required the preparation, under the direction of the assessing officers, of a land map of the city to be known as "'the block map of taxes and assessments of the city of New York,' upon which shall be exhibited under sections, and section numbers and block and block numbers the separate lots or parcels of land owned or taxed within each of the city blocks; each lot or parcel of land shown on such map to be designated thereon by lot numbers, and which lot numbers shall correspond as far as may be with the present ward numbers of said lots or parcels, and shall commence in each block with number one, and continue numerically upwards, for as many of such lots or parcels as shall be comprised within each block" (Section 1), the certification and filing as prescribed of the map, and that thereafter no change be made in the sections, blocks, section numbers or block numbers, but new sections and blocks and their numbers shall be mapped as necessity required and the officers might number the lots therein and from time to time change upon the map the form and numbers of the lots, "and the annual record of the assessed valuation of real and personal estate in said city shall thereafter be prepared under the direction and supervision of the said commissioners, so that the entries therein of all taxes and assessments laid or levied on land in said city shall be under sections and block headings as may be most convenient and suitable for use in connection with said block map; and the said 'annual record' shall otherwise be of such general form and plan as the said commission-

ers may direct." (Section 4.) The statute contemplated that each assessed parcel of land should be described for assessment and taxing purposes in the annual record of the assessed valuation of real and personal estate by a designation consisting of a certain number of a certain section or of a certain block of a certain section as delineated and definitely located by "the block map." The owner of property subject to assessment might ascertain from the map the section and block therein in which the property was and the lot number and, having such knowledge, could ascertain from the annual record containing the corresponding description the amount of the tentative assessment there made. The charter of 1897 extended this statute to the city it created (§§ 889, 891, 1608, 1610) and provided further that the maps and assessment rolls of the municipalities or parts of municipalities consolidated by it should be delivered to the board of taxes and assessment as public records open to public inspection and that the necessary surveys and corrections of the ward maps and all new maps which might be required for the more accurate assessment of real estate within the territory consolidated with the then existing city should be made. (§§ 890, 891.) These sections clearly contemplated that the assessing board might adopt existing maps which were consistent with and might be made a part of the section, block and lot system or cause, as necessary, interim or permanent block maps to be made and filed. The system was extended throughout the consolidated city. It effected the identification of each parcel of real estate assessed beyond any reasonable possibility of doubt or mistake and was adequate and lawful.

Under the charter of 1897 (L. 1897, ch. 378) deputy tax commissioners, appointed by the board of taxes and assessment, were charged with the duty under the direction of the board " to assess all the taxable property in the several districts that may be assigned to them for that purpose by

said board, and they shall furnish to the said board, under oath, a detailed statement of all such property, showing that said deputies have personally examined each and every house, building, lot, pier, or other assessable property, giving the street, lot, ward, town and map number of such real estate embraced within said districts, together with the name of the owner or occupant   *   *   *   (also, in their judgment, the sum for which said property under ordinary circumstances would sell), with such other information in detail relative to personal property or otherwise, as the said board may, from time to time require." (§§ 884–889.) The detailed statement of a deputy tax commissioner or the deputy tax commissioners for any district constituted the "annual record" already mentioned of the assessed valuations of real and personal estate within that district. Provision was made by the charter for a grievance period, at the termination of which "the board of taxes and assessments shall cause to be prepared from the books of annual record of assessed valuations of real and personal estate in the several offices of the department of taxes and assessments in the several boroughs, assessment rolls for each of said several boroughs" (section 907), to be completed as prescribed for delivery to the municipal assembly.

The appellant asserts that the annual record of the assessed valuation of its real estate in question did not describe it as required by the statute, and the assessment in its origination was void. Therein it errs. The findings of fact disclose that the real estate was in that part of the town of Hempstead of the county of Queens included within the consolidated city. As a part of the city, it was in that part of the fifth ward of the borough of Queens, known as Edgemere, and was bounded on the north by Spray View avenue, on the west by Beach avenue on the east by Grand View avenue, and on the south by the Atlantic ocean, and comprised a block in area. Upon a land map of "Edgemere," in a volume of maps entitled

"Department of Taxes and Assessments. Maps of the Borough of Queens, 5th Ward, formerly town of Hempstead, Volume 1, January 1899," and authenticated and filed, as required by the statute already referred to, this block was delineated as lot 1, block 10, ward 5, Edgemere, borough of Queens, and as bounded as above stated. No other lot was identically delineated. The appellant asserts that this map was not prepared under chapter 542 of the Laws of 1892 and, moreover, by reason of its indefiniteness neither added to nor detracted from the particulars shown by the annual record and did not under the chapter 542 make complete and definite the description of the annual record. Concerning the map, the Appellate Division, resettling a finding of the trial court, made the finding: " The map read in evidence was a former map of the territory wherein were situated and are situated the land and premises in question, and said map has not been supplanted by any map prepared under the act of 1892, but the said map was used in conformity to the implied permission contained in section 4 of chapter 542 of the Laws of 1892, and of section 890 of Greater New York Charter, and was adopted and prepared according to the provisions of section 891 thereof." We approve the finding. The map is adequate for the lot, block and section system of assessing. The section is " Edgemere " in ward 5 of the borough of Queens; the block therein is 10; the lot therein is 1; moreover, it exhibits the block bounded by the streets, as stated. The plaintiff or any person seeking the knowledge would know from the map the ward, the section and the block in which the lot was and its number.

We turn now to the description of the property in the annual record. The page upon which the description is has at its top " Edgemere, Ward 5, Volume 1, Block No. 10, Between Beach and Grand View Avenues. Between Atlantic Ocean and Edgemere Avenue," and within the columns by their headings made descriptive of the prop-

erty are: " Size of lot —— x 230, Ward No. 1, Street number S. E. Cor. Avenue, Beach." The trial court found, in effect, that the expression " Volume 1 " referred to the volume of land maps already referred to and found, in effect, that the expression " Ward No. 1 " gave the ward and map number of the lot. It does not appear that it had a street number or numbers. This description is adequate and definite. It designates with certainty the lot there assessed as lot 1 of block 10 of " Edgemere " of the fifth ward of the borough of Queens and as delineated by the land map already described. Neither the owner nor the public would be uninformed or misinformed from the annual record and the map as to the precise property assessed. The description identified the property of the plaintiff and none other. It defined to the owner and the public the property upon which the assessment was placed, and was sufficient for the purpose of a lawful and effective conveyance of it. The findings do not state whether or not there were buildings or structures upon the lot; moreover, the statute does not require that the annual record or assessment roll disclose their existence or value. The statute is satisfied when the descriptive facts it prescribes are accurately given. The statutory requirement that the annual record show the examination of the property as prescribed was complied with.

The appellant asserts also that the assessment roll did not correspond to the annual record, and did not contain the same description, or a sufficient description of the property. The statute required the board of taxes and assessments to cause to be prepared " from the books of annual record of assessed valuations of real and personal estate in the several offices of the department of taxes and assessments in the several boroughs, assessment rolls for each of said several boroughs, and shall, as soon as such rolls are completed, annex to each of said rolls their certificates that the same is correct in accordance with the entries in said several books of record." (§ 907.) The

description of the property in the assessment roll is substantially and in effect that given in the annual record, and fulfills the statutory requirement relative to it.

The appellant claims also that the valuation of the property, originally stated in the annual record as $141,000, was illegally changed to $120,000, as stated in the assessment roll, and in the annual record in the column headed "Corrected amount," and for such reason the assessment was void. Findings of fact are: In April, 1899, the plaintiff properly applied for a reduction of the valuation of $141,000 to $25,000. Thereupon the deputy tax commissioner reported to the board of taxes and assessments recommending, after a re-examination of the property, as stated, a reduction to $120,000, and a member of the board signed the initials of his name beneath the report of the deputy and beneath the words "report of deputy confirmed" theretofore written on the back of the plaintiff's application for reduction above referred to; "That thereafter and prior to the making of the assessment roll for the year 1899 the assessment of $141,000 against block 10, lot 1, ward 5, Edgemere, was duly reduced to and fixed at the sum of $120,000 by the board of taxes and assessments of the city of New York. There is no evidence to show that the board of taxes and assessments of the city of New York did not properly reduce the tentative assessment of $141,000 to the sum of $120,000." The statute relative to this point directed the deputy tax commissioners designated thereunto by the board to receive applications for the revision and cancellation of any assessments entered in the books of annual record, to take and reduce to writing the testimony on such applications and to remit the applications and testimony with their recommendations to the board of taxes and assessments at a prescribed office. It further provided: "The board of taxes and assessments shall hear at their main office all applications of corporations for revision and cancellation of assessments," and further:

" All testimony taken by the board of taxes and assessments by any commissioner or by deputy tax commissioners as herein prescribed, shall be reduced to writing and shall constitute part of the record of the proceedings upon any assessment." (§ 898.) Neither the annual record nor the assessment roll indicate that the statute was not complied with. The findings above quoted are findings of fact, uncontradicted by the public records before us, and having been unanimously affirmed by the Appellate Division are not open to review here.

The appellant asserts further that the assessment and tax are illegal because the sum of the tax in dollars and cents was set down in the assessment roll, opposite the sum of the valuation of the property, in a column other than the fifth. The statute, relevant to this claim, provided that the municipal assembly " must estimate and set down in a fifth column, to be prepared for that purpose in the assessment rolls, opposite to the several sums set down as the valuation of real and personal property, the respective sums, in dollars and cents, to be paid as a tax thereon * * *." (§ 910.) This provision was not complied with. The assessment and the sum of the tax are stated in a single line upon a page of the volume of the assessment roll. In a column next following those used for the description of the property and headed " Value of real estate in dollars " are the figures " $120,000 " and opposite them in the next and the eighth column, which is headed " Tax in Dol. Cts.," are the figures " $3,929.34." The power to assess property for the purpose of taxation and to levy taxes is strictly statutory. A substantial compliance with those statutory provisions, defining and regulating the exercise of it, which are of the substance of the procedure and are designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the validity of the tax. Those provisions are mandatory. Other provisions, however, are intended to instruct and guide the assessing

officers and secure regularity and uniformity of procedure, and are directory and not mandatory unless accompanied by negative or restrictive words importing that the acts prescribed shall not be done in any other manner or time than that designated. The failure to comply strictly with a directory provision does not render the assessment or tax invalid. (*French* v. *Edwards*, 13 Wall. 506; *Bemis* v. *Caldwell*, 143 Mass. 299; *Westfall* v. *Preston*, 49 N. Y. 349.) The appellant has not suggested in argument or briefs that the placing of the statement that the amount of the tax was $3,929 34 in the eighth column, instead of the fifth, would tend to the sacrifice of its property or injury of its rights, nor do we conceive that it could. The requirement, as enacted in section 910, is directory and was substantially complied with.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, HOGAN, MILLER and CARDOZO, JJ., concur.

Judgment affirmed.