[S. F. No. 15244. In Bank.—September 13, 1934.]

THE HOLMES INVESTMENT COMPANY (a Corporation), Petitioner, v. THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Robert M. Searls, Jesse H. Steinhart, J. S. Lamson and Francis V. Keesling for Petitioner.

John J. O''Toole, City Attorney, and Leo C. Lennon, Deputy City Attorney, for Respondents.

PRESTON, J. — *Mandamus* proceeding presented by a petition and general demurrer thereto. The issue involved is the proper scope to be accorded the word ''expenditures'' found in article XI, section 20, of the Constitution, this section being a part of the so-called Riley-Stewart tax plan voted into the Constitution and made effective June 27, 1933.

The proper construction of this word will disclose the ingredient items which shall go to make up the net sum or ''base'' upon which the permitted increase of revenues for a given year over the preceding year or years is to be calculated. Petitioner is a taxpayer and asserts that respondent board is now, by its proposed tax levy for the year 1934–1935, about to exceed the allowable sum by $1,866,696. Petitioner, in reaching the' above amount of excess, strips from the gross budget the items specially mentioned in said constitutional provision and also the following items: ''Proceeds of 1932 relief bonds'', ''borrowings from the state loan relief fund'', and all so-called subventions, consisting of such items received from the state as orphans' aid, widows' pensions, tuberculosis patients, one-half of cost of fire-boats, pensions to the blind, old age pensions and gasoline and motor vehicle tax. The amount so arrived at is called the net base and it is then compared with the corresponding figures for the years 1932–1933 and 1933–1934. Thus comes into being the proper base for the calculation of the increase allowable according to petitioner. But it is further disclosed that the decrease in such base figure of the year 1933–1934, over the year 1932–1933, is in excess

of the figure obtained by taking five per cent of the base figure of 1933–1934.

Petitioner allows the city the benefit of the larger of the two items and deduces the conclusion that the corresponding base figure for the year 1932–1933 becomes the limit of revenue allowable to the city and county for the year 1934–1935. This limit is less than the proposed limit set by respondents by the said sum of $1,866,696. Respondents insist that not only should the proceeds of said relief bonds be an ingredient of said net base but also the sums borrowed from the state relief fund and the so-called subvention items as well.

The provision of the Constitution, paraphrased to show the provisions here pertinent, reads as follows (art. XI, sec. 20): "The expenditures, other than expenditures to pay interest and redemption charges on bonds heretofore or hereafter issued . . . shall not in any year exceed by more than five per centum the expenditures, other than expenditures to pay interest and redemption charges on bonds heretofore or hereafter issued . . . provided . . . that any county (etc.) . . . that decreases the amount of its expenditures in any year or years may increase, in any subsequent year or years, the amount of its expenditures by the amount, or any fraction thereof, so reduced, or by an amount not more than five per centum of the amount expended in the year immediately preceding . . . provided, however, that the limitations upon expenditures imposed or authorized by this section shall not apply to expenditures by or on behalf of publicly owned public utilities . . . or to expenditures arising out of any gift, bequest or donation. . . . "

■ We are unable to respect the limits imposed by the section and at the same time sustain the contentions of respondents. The clear intent of the provision is to limit the amount to be raised by taxation to a stipulated increase over the corresponding amount for the next preceding year. The section is a part of the deliberate plan to relieve real property from the excessive burden of taxation under which it was suffering, transfer it to the state, and to forbid any arbitrary or unregulated increase of it thereafter. The whole scheme would be of little consequence if this were not its purpose. The section in question expressly forbids a

place in said base amount for such items as expenditures to pay interest, redemption charges on bonds, sums spent on publicly owned utilities and sums received from bequests, gifts or donations.

Now to allow the proceeds of any bond sale of whatsoever type to enter into said base would be to insert therein a false factor which would be pyramided from year to year thereafter. Nor could the proceeds of bonds of one class be included without including the proceeds of bonds of all classes. The argument that the relief fund could have been raised by taxation and therefore should be allowed cannot be followed as this would necessarily include all other bonds for which the power of taxation might have been substituted. Besides the taxing power is being curbed, so why should it be allowed to feed upon a fund raised by a two-thirds vote of the people and unrelated to the question of taxation for current expenditures? Moreover, why exclude the levy for payment of bond interest and redemption charges and include in the base the proceeds of the bonds themselves? The bonds and their retirement are fixed items and should be expressly excluded from this plan for retrenchment.

It seems, generally speaking, that fixed obligations are excluded and obligations of varying amounts for current items are affected by the restriction. The loan from the state and the subventions seem clearly to be excluded as gifts, bequests or donations. We can see no logical place for them as ingredient items of said base. These views are in substantial accord with the holding of the District Court of Appeal, Third District, opinion by Mr. Justice Plummer, in the case of *Crow* v. *Board of Supervisors*, 135 Cal. App. 451, 463 [27 Pac. (2d) 655, 28 Pac. (2d) 906], where it is said:

"Observing the first rule, the word 'expenditures' is broad enough to include every item of payment and every dollar of money paid out by the county, irrespective of the source from which the money is obtained. The proviso in the section under the third rule, excluding interest and redemption charges on bonds, would fall under the expression that the exclusion of one item of expenditure would include all other items of expenditure. Thus, the base established following this rule for determining the 5 per cent increase

would include moneys received from the state derived from the gasoline tax, and apportioned to the respective counties according to the method provided by the legislature for use upon county roads. However, we think that both the general language used in the section and the rule relating to the proviso must give way to the enforcement of the intent or purpose sought to be accomplished, to-wit: The lessening of the burden of taxation upon the respective counties and its assumption by the state, and therefore that the section relates only to moneys derived from county taxation, and not from gasoline money distributed by the state. Gasoline taxes are in no sense of the word county taxes.''

We understand it to be conceded by both parties that the San Francisco School District is to be considered a separate entity within the operation of said section of the Constitution and there is no intent on the part of respondents to exceed the limitation imposed upon the school revenues. If hardships should arise from the enforcement of this restriction, the section provides a method of relief through the board of equalization or a vote of the people and, moreover, without further legislation the restriction will expire June 30, 1935. The petition must therefore be sustained.

Let the peremptory writ issue as prayed.

Curtis, J., Seawell, J., Spence, J., *pro tem.*, and Waste, C. J., concurred.

Rehearing denied.