[S. F. No. 15664. In Bank.—May 26, 1937.]

SKELLY ESTATE COMPANY (a Corporation), Appellant,
v. CITY AND COUNTY OF SAN FRANCISCO (a
Municipal Corporation), Respondent.

Cushing & Cushing, Delger Trowbridge, Ben C. Duniway and J. S. Lamson for Appellant.

Hartley F. Peart, Gus L. Baraty, Howard Hassard, Louis Ferrari, Morrison, Hohfeld, Foerster, Shuman & Clark, Sloss, Turner & Finney, Tobin & Tobin, Brobeck, Phleger & Harri-

son, Leslie E. Murke and Heller, Ehrman, White & McAuliffe, as *Amici Curiae* on Behalf of Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Deputy City Attorney, for Respondent.

THE COURT.—The appeal in this case presents for decision the question of the validity of the tax levy of the City and County of San Francisco for the fiscal year 1934–35. The plaintiff on the first Monday in March, 1934, owned certain real property which was assessed for taxation for that year. It paid under protest the first instalment of the taxes thereon and sued to recover the amount so paid. The trial court rendered judgment in favor of the city.

In 1933, the people adopted article XI, section 20, of the Constitution, which reads in part: "The expenditures, . . . of any county, city and county, municipality, district or other political subdivisions of this state, whether or not operating under freeholders' charters, shall not in any year exceed by more than five per centum the expenditures . . . of such county, city and county, municipality, district or other political subdivision for the preceding year unless previously authorized by two-thirds vote of the qualified electors of any such county, city and county . . . voting at an election held for that purpose or unless previously authorized by the State Board of Equalization in such a manner as may be provided by law; . . . "

Shortly after the adoption of the constitutional provision, the legislature added section 3714b to the Political Code. This section, at the time of the acts here complained of, required that any application to the board of equalization to exceed the limitation on expenditures "shall be in writing and must be filed with the board at least 30 days before the date fixed for the determination of the tax rate of such . . . city and county . . . for the year for which permission to exceed the limitations on expenditures is requested". It also provides that within twenty days after filing any such application, the board shall approve or disapprove it in whole or in part.

The proposed expenditures of the respondent for the fiscal year 1934–35 were reviewed by this court in the case of *Holmes Investment Co.* v. *Board of Supervisors*, 1 Cal. (2d) 482 [35 Pac. (2d) 542]. The petitioner in that proceeding

alleged that the board of supervisors intended in its tax levy to exceed the allowable amount by $1,866,696. On September 14, 1934, a peremptory writ of mandate issued requiring the board to omit this amount from the budget then being prepared.

At a meeting of the board of supervisors held on September 14th a resolution was adopted that application be made to the State Board of Equalization "for permission to exceed during the fiscal year the limitations on expenditures set forth in section 20 of article XI of the Constitution" in the amount of $1,866,696. On the afternoon of September 14th application was made to the board of equalization at Sacramento. Later on the same day, the board of equalization made an order that the city and county be authorized to exceed the limitation upon its expenditures in an amount of $1,177,181. On the following day the board of supervisors passed an ordinance levying taxes for the fiscal year 1934–35 at a rate based upon total expenditures which included the increase allowed by the order of the board of equalization.

The appellant challenges the levy on two grounds: First, that the resolution of the board of supervisors authorizing an application to the board of equalization was not adopted as required by the Charter of San Francisco, and, second, that the board of equalization could not validly act upon the application the day it was filed. The contention concerning the first question is that the resolution was passed on the day of its introduction with no prior reference of the resolution to or preparation and report out by a committee of the board. The contention on the second question is that the provisions of section 3714b of the Political Code are mandatory and that when the city's application to the board of equalization was filed the time had expired within which it might be considered. It is conceded that if the board of supervisors had no authority to fix the tax rate on the basis of the increased expenditures allowed by the board of equalization plaintiff is entitled to recover.

In the Holmes Investment Company case, *supra*, this court said of the constitutional amendment of 1933: "The clear intent of the provision is to limit the amount to be raised by taxation to a stipulated increase over the corresponding amount for the next preceding year. The section is part of the deliberate plan to relieve real property from the ex-

cessive burden of taxation under which it was suffering, transfer it to the state, and to forbid any arbitrary or unregulated increase of it thereafter. The whole scheme would be of little consequence if this were not its purpose.''

■ An approval to exceed the five per cent limitation could be obtained in two ways: (1) By a vote of the people, or, (2) By action of the State Board of Equalization in a manner which might be set up by the legislature. The constitutional amendment provided that the limitation on expenditures could be exceeded if the people of the city, city and county voted upon it, or, in lieu of this method of approval, the State Board of Equalization could sanction it. It was, therefore, solely within the jurisdiction of the legislature to set up the procedure whereby the body seeking approval could present its application for permission to exceed the ''allowable''. There was no maximum or minimum time for notice, filing or hearing provided for in the constitutional amendment; therefore the legislature in its discretion could make any provision it desired consistent with the orderly course of business in the board of equalization.

By its terms, and without further legislation, the restriction provided for would expire June 30, 1935. (*Holmes Investment Co.* v. *Board of Supervisors, supra.*)

■ Jurisdiction was granted to the State Board of Equalization by the constitutional amendment. (*Holmes Investment Co.* v. *Board of Supervisors, supra.*) So far as that portion of the amendment is concerned it was self-executing. Any legislation subsequently enacted would be, therefore, for sole purpose of defining the mechanics of filing an application and gaining the approval of the State Board of Equalization.

■ The State Board of Equalization, having jurisdiction over the matter, could have rejected the application made by the board of supervisors. However, since the requirement was purely one of procedure and one to aid in the orderly course of the business of that body, they could and did waive the requirements.

It seems clear that section 3714b of the Political Code was enacted for the benefit of the governing bodies of the political subdivisions therein mentioned. No notice is required to be given to the public that an application to exceed the .allowable was to be filed, or was on file, nor was a public hearing provided for. The situation directly involved only the body

seeking the approval and the State Board of Equalization. A taxpayer who might be affected at a later date by the result of that proceeding was not directly interested at that time; i. e., the taxpayer was not a necessary party to such proceeding.

 Provisions which have been enacted as a guide to orderly proceedings and which, from the intent of that legislature gathered from the provisions of the act and the end sought to be accomplished thereby are not mandatory, are merely directory. This court in *Ryan* v. *Byram,* 4 Cal. (2d) 596 [51 Pac. (2d) 872], where it had to construe the meaning of section 3714 of the Political Code, said: "It is a well-settled rule of construction, applicable to tax statutes, that only those provisions enacted for the benefit of the taxpayer are mandatory, while provisions enacted to secure the orderly conduct of business are merely directory." (See, also, Cooley on Taxation, 4th ed., sec. 510; *Talon* v. *Vindicator etc. Co.,* 59 Colo. 316 [149 Pac. 108]; *Beirl* v. *Columbia County,* 73 Or. 107 [144 Pac. 457].)

The rule of construction stated in Cooley on Taxation, *supra,* has been substantially codified in this state by section 3885 of the Political Code, which provides:

"No assessment or act relating to the assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law."

 The general use of the word "must" in an act does not *ipso facto* make the provision mandatory. Nor is the construction to be placed on a tax statute in which that word is used to be stricter, necessarily, than another statute not having taxation procedure for its subject-matter. In *Rutledge* v. *City of Eureka,* 195 Cal. 404 [234 Pac. 82], this court aptly said, "There is no declaration in the section that its language is mandatory. The use of the word 'must' is not necessarily determinative of its mandatory import. The words 'shall' and 'must' are frequently construed as directory terms. (*Cake* v. *City of Los Angeles,* 164 Cal. 705 [130 Pac. 723]; *People* v. *San Bernardino High School Dist.,* 62 Cal. App. 67 [216 Pac. 969].) There are in the section no negative words forbidding the filing of the notice after the time fixed. Nor is there language importing an intention to withdraw power to enforce the assessment following a belated notice. Nor is any right of the property owner shown to

be lost or impaired by the failure to file the notice on time. Under such circumstances it is proper to construe the time requirement to be directory . . . '' The rules of construction and interpretation in *People* v. *Lake County,* 33 Cal. 487, and *Buswell* v. *Board of Supervisors,* 116 Cal. 351, 354 [48 Pac. 226], are applicable here.

In the case before us there are no negative words contained in section 3714b of the Political Code nor is it shown that time is of the essence. The appellant here did not lose any right, which it would have had, had the application to the State Board of Equalization been made in compliance with the thirty-day provision. Therefore, as to the board of supervisors' failure to comply with the provisions of section 3714b of the Political Code, the appellant has no cause to complain if there was a mere delay in the filing of the application. The State Board of Equalization had jurisdiction to receive the application and there is no doubt but what due consideration was given it. This latter statement is borne out by the fact that part of the amount applied for was disallowed by it. The action taken by the board of equalization was not invalid.

■ It is appellant's next contention that the resolution adopted by the board of supervisors was invalid in that it did not comply with section 13 of the Charter of the City and County of San Francisco, entitled ''Action by Resolution or Ordinance''. Section 13 of the charter in so far as it is pertinent reads: ''Action of the board of supervisors shall be by ordinance or resolution introduced in writing and passed or adopted by at least a majority of all the members at each reading. Every legislative act shall be by ordinance. . . . Every ordinance and resolution, except . . . shall be confined to one subject which shall be clearly expressed in the title, . . . ''

''An ordinance shall be passed by the board of supervisors only after reference to and report thereon from committee, unless it be an ordinance prepared and reported out by committee, and after two readings and votes at separate meetings of the board, which meetings shall be at least ten days apart; provided, however, that as to an emergency measure as defined in section 16, reference to committee or the readings and votes at separate meetings may be waived by a three-fourths vote of all members of the board. The existing or

impending emergency as defined in such ordinance shall be declared by specific vote of the board. No other resolution shall be adopted by the board of supervisors on the date of its introduction and without reference to committee, except by the unanimous consent of the supervisors present. Annual budget and appropriation ordinances shall be passed only after two readings, no less than five days apart, and the second and final passage shall be not less than fifteen days after the introduction of each such ordinance.''

Appellant argues that the sentence, ''No other resolution . . . '' includes and limits the manner in which the resolution of the board of supervisors, herein complained of, could be passed by that body. It is respondent's contention that although section 13 includes both resolutions and ordinances in its title and provisions, the word ''resolution'' in the sentence just referred to was inadvertently put in by the drawers of the charter and that to read a meaning into the statement the word should be ''ordinance''. Respondent's contention has merit when viewed in the light of the whole paragraph and section. Throughout the entire section the expression ordinance or resolution, or ordinance and resolution, is used. The word ''ordinance'' was used in paragraph with the sole exception of the use of ''resolution'' in the sentence in question. It will be noted that the manner or procedure for valid passage of an ordinance is set forth, including an emergency ordinance. In the midst of this, the words, ''No other resolution shall be adopted by the board of supervisors on the day of its introduction . . . '' appear. To read meaning into the words as they stand appears to be impossible for the word ''resolution'' refers to nothing and does not precede any statement that would throw light on its meaning. However, to read the word as ''ordinance'' would give meaning to the sentence and full meaning to the paragraph. In the early case of *People* v. *Todd,* 23 Cal. 181, a legislative act legalized assessments for taxes for the fiscal year ending on the first of March. The Constitution provided that the fiscal year should commence on the first day of July. The court in order to give full effect to the act treated the word ''fiscal'' as surplusage. In doing so the court said, ''We would not be justified in holding this statute void because it uses the term 'fiscal' in an inappropriate manner. On the contrary, if necessary, it would be more appropriate to treat the word 'fiscal' as surplusage, and thus give the statute full

effect." In *Uhl* v. *Badaracco,* 199 Cal. 270, 284 [248 Pac. 917], the rule is laid down that, "Where the language of a statute is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former will be adopted. (*Goldsmith* v. *Board of Education,* 66 Cal. App. 157 [225 Pac. 783].)" Substantially the same rule is applied in *Douglas* v. *Pension Board,* 75 Cal. App. 335 [242 Pac. 756].

Therefore, to apply the argument and the rules of construction to the instant set of facts, the conclusion is necessarily reached that the procedure followed by the board of supervisors in passing the resolution was valid. There is no requirement in the charter that a resolution had to be referred to a committee and come out of that committee to the board before it could be considered. There is no language specifying that a resolution had to be adopted in any particular manner or by any given number of votes other than by a majority vote.

The procedural steps taken by the board of supervisors and by the State Board of Equalization were not in disregard of article XI, section 20, of the Constitution, section 3714b of the Political Code or of section 13 of the charter. The tax levy based on the approval obtained from the State Board of Equalization was valid and appellant here has no cause for complaint. The judgment of the trial court should be affirmed.

Judgment affirmed.

EDMONDS, J., Dissenting.—I cannot agree with the conclusions reached by my associates. By the constitutional amendment in controversy (article XI, section 20), the expenditures of the respondent city and county shall not in any year exceed by more than five per cent its expenditures for the preceding year unless authorized by a vote of the people or "unless previously authorized by the State Board of Equalization in such manner as may be provided by law". It also provides that "the legislature shall pass all laws necessary to carry into effect the provisions of this section". Section 3714b of the Political Code was enacted pursuant to this latter provision and limits the applications which may be acted upon by the board to those filed at least thirty days

before the date fixed for the determination of the tax rate of the political subdivision desiring to increase its expenditures.

The purpose of that provision is evident. In further provisions the section specifies the factors to be considered by the board in passing upon an application. The section provides: "The board shall meet to consider such application and shall grant a hearing thereon if requested by such tax-levying authority or governing body. In acting upon any such application the board shall give due weight to changes in population, economic conditions, and such other factors or circumstances as may influence or affect the need for increased governmental expenditures." This language evidences the determination of the legislature that permission to increase expenditures is only to be granted where substantial reason exists, and after a full consideration of the "factors and circumstances" presented. It seems obvious that the application of the respondent was not presented or considered within either the letter or the spirit of the requirements laid down by the people of the state.

The respondent justifies its failure to file its application within the time fixed upon the ground that the language of section 3714b is merely directory. Such a construction would violate the plain terms of the statute and thwart the purpose of the people. The legislature was commanded by the constitutional amendment to pass all laws necessary to carry its provisions into effect. Until the Political Code section was enacted there was no authorized procedure for a political subdivision to follow in applying to the State Board of Equalization for permission to increase expenditures. That section prescribed the time within which the application might be presented and acted upon. If the constitutional amendment included the provisions of section 3714b, there would be no doubt of their mandatory nature. The effect of such provisions cannot be different when enacted by the legislature pursuant to the specific constitutional mandate of the people.

Wherever tax statutes are passed for the protection of the taxpayers, and the legislation here considered certainly comes within that category, their provisions are mandatory. To consider such provisions as directory would make them entirely ineffective. One of the leading cases on this point in the United States is *French* v. *Edwards*, 13 Wall. (U. S.)

506 [20 L. Ed. 702]. This case involved the validity of a California tax deed, and Justice Field laid down the general rule as follows: "There are undoubtedly many statutory requisitions intended for the guidance of officers in the conduct of business devolved upon them which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." Reference may also be made to *Torrey* v. *Inhabitants of Millbury*, 38 Mass. (21 Pick.) 64; *Lancaster etc. Co.* v. *City of New York*, 214 N. Y. 1 [108 N. E. 90]; *State Auditor* v. *Jackson County*, 65 Ala. 142; *Howard* v. *Jensen*, 117 Neb. 102 [219 N. W. 811]; *Mallery* v. *Griffin*, 43 S. D. 71 [177 N. W. 818]; 25 R. C. L. 770.

The same general rule has been stated in a number of California cases. In *Uhl* v. *Badaracco*, 199 Cal. 270, 282 [248 Pac. 917], this court pointed out that "as tax proceedings are *in invitum*, laws pertaining thereto are to be strictly construed in favor of the taxpayer and against the taxing power". More particularly in point is the case of *Ryan* v. *Byram*, 4 Cal. (2d) 596 [51 Pac. (2d) 872], which was a proceeding brought by a taxpayer upon the ground that certain portions of a tax levy were invalid. It was contended that the provisions of section 3714 of the Political Code which provides a complete statutory method for the adoption of a budget and for the levying of taxes are directory and not mandatory. It was there held "that the provisions for preparing a preliminary budget; for its printing and publication; for the giving of notice and the holding of hearings; and for the adoption of a budget before the tax rate is fixed are all for the benefit of the taxpayer, are mandatory, and

that, if any of these steps had been omitted, the tax levy would be invalid''.

In the present case the board of equalization in the few hours between the time the application of the respondent was filed with it and the time its order was made could only have considered the facts presented in a most perfunctory way. Obviously, it was not possible to review the necessities of the city and county for the succeeding fiscal year in the manner which the statute contemplates. If such procedure meets the requirements of the statute it serves no useful purpose. The clear intent of the new legislation is that an increase shall be allowed only after there has been a full examination of the needs of the political subdivision, as presented by its tax-levying authority, and also of the ability of the taxpayers to meet the additional charges. The requirement concerning the time when an application must be filed is a substantial element of the procedure; it is a matter of substance, not of mere form, and it cannot be ignored. It is, therefore, mandatory, not directory, and to be strictly complied with. (*Francis* v. *Superior Court*, 3 Cal. (2d) 19 [43 Pac. (2d) 300].)

The judgment should be reversed with directions to the trial court to enter judgment for the plaintiff as demanded in the complaint.

Rehearing denied. Edmonds, J., voted for a rehearing.