THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BROOKLYN UNION GAS COMPANY, Relator, *v.* WILLIAM STANLEY MILLER and Others, Commissioners of Taxes and Assessments, Constituting the Board of Taxes and Assessments, Head of the Department of Taxes and Assessments of the City of New York, Defendants

Supreme Court, Special Term, Kings County, July 6, 1939.

*Cullen & Dykman,* for the relator.

*William C. Chanler, Corporation Counsel,* for the defendants.

DODD, J. This motion is made by the relator for judgment on the pleadings in a certiorari proceeding to review the assessment for 1936 upon seventeen parcels of land, belonging to the relator, in the borough of Brooklyn. The writ was granted on May 23, 1936, for a review of said assessment upon the grounds of illegality, overvaluation and inequality. The defendants moved in November, 1936, for an order striking out a portion of the petition and quashing the writ as to a review upon the grounds of overvaluation and inequality. The motion was granted in part but the order entered thereon was reversed by the Appellate Division and the sufficiency of the petition was upheld. (*People ex rel. Brooklyn Union Gas Co.* v. *Miller,* 253 App. Div. 162.) The return to the writ was made on September 22, 1938.

The question of the illegality of the assessment was not before the court on the prior motion. It is the only question raised on the present motion.

The facts may be briefly stated as follows: The relator, in 1935, owned sixty-three parcels of real estate in the borough of Brooklyn. On October 1, 1935, when the annual record of assessed valuation of real property was opened for the inspection of taxpayers, pursuant to law, these parcels were valued and entered separately in a book entitled " The Annual Record of the Assessed Valuation of Real Estate in the Borough of Brooklyn," which is the book prescribed by section 897 of the Greater New York Charter. Prior to 1935, the relator's parcels of land had been valued and entered in the same manner. Seventeen of these sixty-three parcels are the ones with which this proceeding is concerned. The sum of the separate valuations of these seventeen parcels, as so entered, was $4,311,550 for the land alone and $21,262,350 with the improvements thereon.

On November 2, 1935, the defendants wrote to the relator to the effect that these seventeen parcels had been given an identification number, No. A123, and that such change in designation was made pursuant to sections 889 and 890 of the Greater New York Charter.

Under the same date, the relator was notified that the properties designated by said identification number would be increased in valuation from $21,262,350 to $40,609,950.

On November 2, 1935, the valuations of these seventeen parcels which had heretofore been entered in said " The Annual Record of the Assessed Valuation of Real Estate in the Borough of Brooklyn " were stricken therefrom and a note was inscribed on said record that the valuations had been transferred to a book called " The Annual Record of Assessed Valuation of Real Estate in the Borough of Brooklyn, Volume 1, Real Estate of Corporations and Special Franchises." On November 12, 1935, the increase of the valuation of these seventeen parcels, as a group, to $40,609,950, was made in the latter book.

An application was made by the relator for a correction of this assessment and a hearing was had. No correction resulted and on March 25, 1936, the relator received a tax bill for $1,104,590.64, which bill was designated as " Real Estate of Corporations, Tax Levy of 1936."

The relator contends that the assessment of $40,609,950 against these seventeen parcels, grouped under the aforesaid identification number, is illegal for two reasons:

1. The said assessment was made and entered in a book not authorized by law.

2. The commissioners of taxes and assessments of the city of New York had no power or authority to increase the valuation of relator's property in that manner or by that method.

In section 897 of the Greater New York Charter it is provided: " There shall be kept in the several offices of the department, books, to be called ' the annual record of the assessed valuation of real estate in the borough of ————,' in which shall be entered in detail the assessed valuation of such property within the limits of the several boroughs."

In section 903 of the said charter it is provided: " The assessed valuation of all real property of corporations shall be entered in duplicate in the office in the borough where the same is assessed and in the main office of the department. The deputy tax commissioners in the districts in the several boroughs which may be assigned to them for that purpose shall furnish to the board, under oath, at its main office, at the time that such statement is filed in a branch office, a duplicate detailed statement of the assessable real property of corporations in such districts, which statements shall be entered upon books to be kept in the main office to be known as ' the annual record of the assessed valuation of real estate of corporations.' "

In the return to this writ the defendants state that " We thereupon caused to be inscribed upon that part of the Annual Record of Assessed Valuation of Real Estate, Borough of Brooklyn, City of New York, 1936, known as Volume 1, Real Estate of Corporations and Special Franchises, a description of all the real property included under Identification No. A123 of which had not theretofore appeared on said part of said Annual Record and we caused to be inscribed under a column headed ' Value of Real Estate Unimproved ' the sum of $4,311,550, and under the column headed ' Value of Real Estate with Improvements thereon ' the sum of $21,262,350. The sum of $4,311,550 was equal to the aggregate of the separate valuations theretofore placed upon the land unimproved formerly indicated by parcel numbers as hereinabove set forth. The sum of $21,262,350 represented the aggregate of the tentative assessments against the former separate parcels of property now included under Identification No. A123 as one single parcel. We also caused to be canceled the amounts formerly inscribed on the other books comprising that part of the Annual Record of Assessed Valuation of Real Estate in the Borough of Brooklyn, City of New York, 1936, in which were entered the former parcel numbered properties."

Further it is stated that " After the determination to increase the valuation and the notice to the relator, we duly caused such increased assessment to be duly inscribed on the Annual Record

of Assessed Valuation of Real Estate in the Borough of Brooklyn, City of New York, 1936, Volume 1, Real Estate of Corporations and Special Franchises, the value of the real estate unimproved being left at $4,311,550 and the value of the real estate with improvements thereon being changed to $40,609,650."

The relator contends that this latter book is the one authorized for the purposes mentioned in section 903 of the said charter while the defendants contend that this latter book is a *part* of the annual record of assessed valuation of real estate which is directed to be kept in accordance with the provisions of section 897 of said charter.

I do not find any authority for the keeping of books for the valuation of the real estate of corporations other than that given by section 903. This section was known as section 893 in the revised charter of 1901 and the purposes and effect of it were construed in the case of *People ex rel. Manhattan Life Ins. Co.* v. *Wells* (91 App. Div. 44; affd., 178 N. Y. 609), in which it was held that that section did " not form any part of the machinery necessary for the imposition of a valid tax against a corporation."

An assessment, to be sustained as valid, must be entered in such book as is designated by the provisions of section 897 of the Greater New York Charter. Consequently, the assessments which were entered as of October 1, 1935, were legally sufficient to subject the described properties to a proper tax. The action of the defendants in transferring the entries to the book known as " Annual Record of Assessed Valuation of Real Estate in the Borough of Brooklyn, Volume 1, Real Estate of Corporations and Special Franchises," however, was ineffective for the purposes intended. I reach the latter conclusion upon the ground that there is no statutory basis for dividing the annual record of assessed valuations into specific parts, such division allegedly being founded upon a distinction in the character of the property assessed. Concededly, section 903, which section authorizes the keeping of a book in the main office to be known as the " Annual Record of the Assessed Valuation of Real Estate of Corporations," does not also authorize the entry of an assessment therein for the purposes of taxation. That section merely contemplates that a book of such description be kept for the greater convenience of corporate taxpayers. (*People ex rel. Manhattan Life Ins. Co.* v. *Wells, supra.*) Nor may it be said that section 897 of the Greater New York Charter justifies, as otherwise contended herein, the action taken by the defendants. The latter assert that the book called " Volume I, Real Estate of Corporations and Special Franchises," is merely a *part* of the book known as " Annual Record of Assessed Valuation of Real Estate." The fallacy of such contention lies in the fact that section 897 does not, specifically or impliedly, authorize a distinction to be drawn

between the assessable real estate of individuals and the real estate of corporations.

Further, and irrespective of the particular book in which the entry was caused to be made, the equally, if not more, serious question is presented as to the ultimate power of the defendants to levy an assessment collectively, as here attempted, against the seventeen parcels as a unit. The return states that the inducing reason for the collective assessment was as follows: " We determined that the aforesaid specifically described real property was so physically connected and so utilized that it should be regarded by us as. a single parcel of real property and should be assessed as a separate parcel of real property and should be indicated by a single identification number pursuant to the power vested in us by Section 890 of the Greater New York Charter, and should be assessed as a separate parcel pursuant to the provisions of law contained in Sections 889 and 890 of the Greater New York Charter. We determined that none of the aforesaid specifically described separate buildings or structures, and associated equipment, and none of the individual plants was a complete unit in itself, but constituted simply an integral part of a unified gas manufacturing and distributing system; that it was impracticable to ascertain the income from, and the operating expenses of, such separate buildings and structures and associated equipment, or such individual plants, and hence it was impossible for us to give proper consideration to whether or not the business conducted by the relator was a paying business or a business which was sustaining a net operating loss, and so to ascertain the continuing utility of the said property unless we viewed the operating system as a whole so far as we were able; that the value of each separate building and structure, and associated equipment, and each individual plant inhered in the fact that it was an integral part of such gas manufacturing and distributing system; and that it was convenient and desirable to assess said property as a separate parcel under Identification No. A123."

Sections 889 and 890 read as follows:

" § 889. Block map of taxes and assessments. The board of taxes and assessments may from time to time change the form of the sections and blocks and also the numbers thereof on the block map of. taxes and assessments of the city of New York heretofore filed in its office whenever such change of form has been caused by proper authority, and there shall thereafter be delineated and entered upon such map such new or additional sections and blocks and their numbers as necessity may require. The board may from time to time change the form of the lots or parcels comprised within any block, and also the numbers thereof, and cause to be shown on such map the separate lots or parcels of land contained in any new block

added thereto and also the lot numbers thereof, according to the general plan employed in the making of such map.

" Every such alteration shall be certified by the board and filed in its office and the map as altered shall be substituted for use in such office and in the finance department and the department of water supply, gas and electricity in place and stead of the map theretofore in use therein.

" § 890. Tax maps. Each separately assessed parcel shall be indicated by a parcel number or by an identification number. Parcel numbers shall designate each parcel by the use of three or more numbers of which one shall be a section or ward number, another a block, district or plat number, and another a lot number.

" Each separately assessed parcel indicated by an identification number shall be shown by a separate map, or by a description or by a map and description. A separate identification number shall be entered upon the tax maps in such manner as clearly to indicate each separately assessed parcel of real property not indicated by parcel numbering. Real property indicated by a single identification number shall be deemed to be a separately assessed parcel.

" The board may maintain as tax maps the maps heretofore prepared, certified and filed under the provisions of chapter five hundred and forty-two of the laws of eighteen hundred ninety-two, which maps may be altered as provided in the preceding section."

There is no authority in the Greater New York Charter for the assessment of separate parcels in gross. The defendants contend that such assessment is justified where the facts and circumstances warrant such procedure. Cases involving the assessment of railroad property or contiguous lots of real property as one parcel are cited in support of this contention. The parcels involved in this proceeding are not contiguous, in fact are geographically separated. In my opinion, the special circumstances of the railroad cases cannot be applied to the situation here. For many years the properties of the relator were separately assessed and no special reason exists for assessment in bulk as may exist in the case of a railroad. It is apparent that the defendants attempted to create a new form of taxation of utility corporations, in effect taxing a " gas manufacturing system " rather than the real estate. Under the plea that a physical connection is established by the mains, which are taxable under the special franchise tax, a single unit is attempted to be created. The power to tax is purely statutory. (*Lancaster S. B. I. Co.* v. *City of New York*, 214 N. Y. 1, and cases cited.) In the absence of legislation directly empowering the taxation of utility corporations in the manner attempted here, I must hold that the commissioners had no power or authority to levy the bulk assessment of these seventeen parcels. The motion must be granted.