OPINION OFsTHE COURT
Betty Weinberg Ellerin, J.
Motions numbered 84 and 148 on the Calendar of March 23, 1982 are consolidated for disposition.
This is an article 78 proceeding brought on behalf of some 452 similarly situated owners of residential properties within the City of New York, to annul and set aside the actions of respondent in seeking to increase the assessed valuation of petitioners’ real estate for the 1982-1983 tax year. Petitioners also seek to enjoin respondent from entering any such increases in the books of the annual record of assessed valuation, on the ground that the Finance Commissioner failed to sufficiently comply with sections 1510 *358 and 1512 of chapter 58 of the New York City Charter, thereby rendering void the purported increases in assessed valuation.
The pertinent provisions of sections 1510 and 1512 of the New York City Charter provide as follows:
“§ 1510. Annual record of assessed valuation; public inspection. — The books of the annual record of the assessed valuation of real estate shall be opened to the public not later than the first day of February in each year, not a Sunday or legal holiday, and remain open during the usual business hours for public inspection and examination until the fifteenth day of March thereafter * * *
“§ 1512. Annual record of assessed valuation; additions and changes. — During the time the books of the annual record of the assessed valuation of real estate remain open for public inspection and examination, and, in the case of real estate other than residential real estate, during an additional period ending the tenth day of May in each year, the commissioner may place on such books any real estate that may have been omitted from such books on the day of the opening thereof, and he may increase or diminish the assessed valuation of any real estate as in his judgment'may be just or necessary for the equalization of taxation; but no such addition to the books and no such increase in assessed valuation shall be made, except upon mailing ten days’ prior written notice addressed to the person whose name appears on the records in the office of the city collector as being the owner or agent of the owner of the real estate affected thereby at the last known address of such owner or agent * * * An affidavit of such mailing shall be filed in the main office of the department. When such notice is mailed after the twenty-third day of February, such owner may apply for a correction of such assessment so added or so increased within twenty days after the mailing of such notice with the same force and effect as if such application were made on or before the fifteenth day of March in such year.” (Emphasis supplied.)
The underlying facts are essentially undisputed. On March 5, 1982, admittedly within the 10-day period required by section 1512, respondent notified petitioners, *359 and other owners of residential property within the City of New York, that the assessed value of their respective real estate interests would be increased for fiscal year July 1, 1982 to June 30, 1983. No issue is raised as to the sufficiency or timeliness of the notice nor does it appear that any member of the petitioning class challenged or sought any corrective action with respect to the new assessed valuations.
The books of the annual record of the assessed valuation of real estate in the City of New York for the fiscal year 1982-1983 had been opened to the public on February 1, 1982 in accordance with section 1510. These “books” were generated from a computer into which respondent, prior to February 1, had typed the assessed valuation of the properties. They remained open to public inspection until March 15, 1982. On that date, between the hours of 4:00 p.m. and 9:00 p.m., respondent entered into the computer the changes in the listed assessments pursuant to the March 5 notices. The changes were not, however, entered on the “books” (actually computer printouts) of the tentative annual record of the assessed valuation, which had been opened to the public. The computer printouts, containing the recorded increases in assessed valuation, for some unexplained reason, are not prepared until the end of May, until which time, there is no record available for public inspection containing changes in the actual assessed valuation of residential property.
Petitioners contend that the failure of respondent to enter the changes on the books, while they were opened to the public, is a fatal defect annulling the purported increases in assessment. They challenge as unauthorized the manner by which the changes in assessed value were made, through entries not during “usual business hours”, conceded to be between 9:00 a.m. and 5:00 p.m., at a time when the “books” had been closed by operation of law. In support of this position, petitioners rely upon the long-established precedents which proscribe any change in assessment after the date fixed for the completion of the assessment rolls (Clark v Norton, 49 NY 243; Westfall v Preston, 49 NY 349; Overing v Foote, 65 NY 263), and, further, offer as authority some more recent appellate *360 decisions which invalidated increases in assessments where there was noncompliance with the notice requirement contained in section 1512 (see Matter of Grand Cent. Bldg. v Tishelman, NYLJ, April 23, 1980, p 10, col 2, affd 78 AD2d 509, mot for lv to app den 52 NY2d 705, 968; Hewlett Assoc. v City of New York, 82 AD2d 792, affg NYLJ, Feb. 6, 1981, p 4, col 5, mot for lv to app den sub nom. Matter of Associated Bldrs. & Owners of Greater N. Y. v Finance Director of City of N. Y., 55 NY2d 601; Matter of Trump v Tishelman, 80 AD2d 858).
Petitioners further allege as improper the city’s use of a computer for recording purposes in lieu of written changes in the actual “books” of assessed valuation. The revised computer record was apparently unavailable for public inspection for more than two months thereafter, that is, until the end of May, 1982. While that procedure may be at variance with both the letter and spirit of the kind of frank public disclosure crucial to the accountability of a municipality, and its agencies, the instant proceeding is not brought for purposes of remedying the inordinate delay in establishing a permanent public record, nor does it seek mandatory relief directing the city to create a more suitable procedure to ensure prompt access to the records of assessed valuation. The sole relief sought herein is a judgment invalidating the increases in assessment upon the real estate of the various petitioners herein. In that context, petitioners have failed to establish any violation of section 1512 which would warrant the relief sought.
In relying upon respondent’s failure to enter the increased assessments, in writing, on the “books” themselves as a basis for invalidating those assessments, petitioners misconstrue the purpose and effect of section 1512. That section is primarily a notice statute, designed to afford taxpayers sufficient opportunity to contest changes in assessed value. Thus, insofar as relevant here, the charter provision proscribes any increase in assessed valuation “except upon mailing ten days’ prior written notice” to the record owner or his agent. While such 10-day notice has been construed as mandatory and the failure to properly comply with such requirement has consistently been held to vitiate any increase in assessment (Matter of Grand *361 Cent. Bldg. v Tishelman, supra; Matter of Trump v Tishelman, supra; Hewlett Assoc. v City of New York, supra; Matter of Frances K. Powell, Inc. v Board of Assessors of County of Nassau, 53 Misc 2d 594, affd 30 AD2d 639), such is not here the issue. Here, it is undisputed that there was sufficient and timely notice and, although each petitioner had ample opportunity to do so, none challenged the propriety of the increase by an appropriate tax certiorari proceeding.
The increases in assessed value were effected by the commissioner by the notices admittedly sent to and received by each member of the affected class. The physical entry to be made in the annual record of assessed valuation, while required to facilitate public access to such records, is a ministerial act and, under the facts and circumstances of this case, has no real bearing upon the efficacy of the increases in assessed valuation. The operative standard was aptly set forth by the Court of Appeals in Lancaster Sea Beach Improvement Co. v City of New York (214 NY 1, 11-12), as follows: “The power to assess property for the purpose of taxation and to levy taxes is strictly statutory. A substantial compliance with those statutory provisions, defining and regulating the exercise of it, which are of the substance of the procedure and are designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the validity of the tax. Those provisions are mandatory. Other provisions, however, are intended to instruct and guide the assessing officers and secure regularity and uniformity of procedure, and are directory and not mandatory unless accompanied by negative or restrictive words importing that the acts prescribed shall not be done in any other manner or time than that designated. The failure to comply strictly with a directory provision does not render the assessment or tax invalid.”
Applying such standard, the court there held as directory a statutory provision that the assessment and resulting tax be listed in designated columns in the assessment roll. Similarly, statutes directing the certification and filing of the assessment roll on or before a designated date have been held to be directory, noncompliance with which *362 does not render the tax roll void (Rose v Elliott, 218 App Div 287; Matter of Draper Div. of North Amer. Rockwell Corp. v Board of Assessors of Town of Piercefield, 37 AD2d 1038; Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment, 60 AD2d 356).
The cases have, significantly, held that a showing of injury or prejudice is required before procedures set forth in the statute will be regarded as mandatory. (Matter of Draper Div. of North Amer. Rockwell Corp. v Board of Assessors of Town of Piercefield, supra.) Even, where, as in section 616 of the Real Property Tax Law, the statute expressly provides that certain acts “shall” be performed within certain time limits, such has not been construed as mandatory if the failure to comply with the time period would not be prejudicial to the taxpayer (Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment, supra).
In the instant case an even stronger situation prevails. Section 1512 of the New York City Charter, strictly construed, does not on its face direct that increases in assessment must be manually recorded in the books of annual record of assessed valuation before 5:00 p.m. on March 15 as is suggested by petitioners. In distinction to the specific direction for “addition to the books” with respect to real estate that may have been omitted from such books on the day of the opening thereof, the statute merely provides that “no * * * increase in assessed valuation shall be made” except upon 10 days’ prior written notice, concededly here given. That such increases in assessed valuation were made by way of entries onto a computerized log rather than by pen and ink entries into the books of annual record can in no way be shown to be prejudicial to these petitioners who have received timely notice of such increases.
To contend that the only valid manner of adding increased assessments to the tax rolls is by pen and ink entries into a bound volume is to ignore the realities of contemporary progress. Contrary to petitioners’ intimations, there appears to be no reason to exclude municipal corporations and other governmental bodies from participating in society’s continued advance within what has become the age of computers.
*363 The use of computers and related systems has made vast inroads in industry and business, with a corresponding enhancement in efficiency and productivity. The applicable law, too, must, and will, adapt to such technological change. As Roscoe Pound, in his Interpretations of Legal History (p 1) aptly observed, “Law must be stable and yet it cannot stand still”.
Consonant with this philosophy, jurisdictions which have had occasion to pass upon the issue have, with continued frequency, commented favorably upon the admissibility and scientific reliability of computer printouts as business records, provided, of course, that a proper foundation has been laid (United States v Russo, 480 F2d 1228, cert den 414 US 1157; D & H Auto Parts v Ford Marketing Corp., 57 FRD 548; Westinghouse Elec. Supply Co. v B.L. Allen, Inc., 138 Vt 84; People v Gauer, 7 Ill App 3d 512; State v Hunnicutt, 44 NC App 531; Orr v State Farm Mut. Auto. Ins. Co., 494 SW2d 295 [Mo]; King v State ex rel. Murdock Acceptance Corp., 222 So 2d 393 [Miss]; Transport Ind. Co. v Seib, 178 Neb 253; see, generally, Ann., 7 ALR4th 8). The Court of Appeals in this State has demonstrated a similar disposition by ruling in favor of the admissibility of computer printouts under the business entry rule contained in CPLR 4518 (Guth Realty v Gingold, 34 NY2d 440, 451-452).
The position urged herein by petitioners that the city must resort to antiquated methods of record keeping merely by reason of the reference in the charter to “books of the annual record of the assessed valuation of real estate” is clearly untenable. That suggestion must fall in light of the present direction of the law in liberalizing the business entry rule insofar as it concerns the reliability of computer records. Overlooked by petitioners is the fact that the computer printout is designed to, and does, serve as the assessment roll or record. The statute neither expressly nor impliedly precludes the use of computer entries and there is no basis for the court to impose arbitrary strictures more appropriate to a bygone era.
Insofar as here challenged, it is concluded that respondent proceeded in proper manner consistent with the relevant statutory provisions, in notifying petitioners as to the *364 changes in assessed value and thereafter entering such increases onto its computer log. The increases in assessment were effected by concededly seasonable notice to the taxpayers, who were thereby afforded a full opportunity to contest the reassessment by institution of appropriate certiorari proceedings, but chose not to do so. The ministerial act of recording the increases by computer entry on the last day before the assessment roll was to be closed, albeit not entirely during “usual business hours”, was neither improper nor inconsistent with the statutory standard, held herein to be directory. To the extent that there was any deviation, there was neither any resulting prejudice to petitioners, nor were their substantive rights in any way adversely affected.
Accordingly, the application is denied and the petition is dismissed. The motion for preliminary injunctive relief is denied as academic.